## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### LANGHORNE v. THE COMMONWEALTH.

#### July 13th, 1882.

1. CRIMINAL PRACTICE—*Evidence.*—Bill of exceptions must show the relevancy and materiality of the excluded testimony to justify reversal of ruling of court below.

2. IDEM—*Impeachment of witness.*—It is not admissible to ask witness if he has not been convicted of an offence, which does not involve his character for truth on oath. *Uhl's case,* 6 Gratt. 706. .

3. IDEM—*Idem—Bias.*—It is proper to ask witness if he has any ill-feeling towards the prisoner, but not to introduce evidence of collateral facts, such as the pendency of a suit between them, and the like; and if he deny it, he may be contradicted by evidence of his own statements or acts, to which, however, his attention must first be specially drawn.

4. IDEM—*Idem.*—No question as to irrelevant facts can be asked witness for the purpose of impeaching his credit by contradicting him; but if asked and answered, his answer will be conclusive. Nor can any question be asked which may furnish a single remote link in the chain of testimony, which may implicate him in a crime.

5. IDEM—*Idem.*—The proper question to be asked of impeaching witnesses is: "Do you know the general character of the witness for truth and veracity, in the neighborhood in which he resides, or recently resided?"

6. IDEM—*Case at bar.*—L was indicted and convicted under criminal procedure of 1878, ch. 3, § 3, Acts 1877-8, p. 287, for burning a "*tobacco factory.*"

HELD:

He was properly prosecuted under that section—a "tobacco factory" being, in the sense of the statute, a "*manufactory.*"

Error to refusal of the judge of circuit court of Bedford county of a writ of error to judgment of the county court of said county, rendered January 10th, 1882, against William Henry Terry Langhorne, upon an indictment for burning a certain tobacco factory in that county, the property

of Robert F. Robertson. He was prosecuted under § 3, ch. 3, Acts 1877-8, p. 287, convicted, and sentenced to nine years' imprisonment in the penitentiary. The facts disclosed by the record are meagre, being limited to the testimony of a single witness, Edward Penn, who testified that the prisoner told him, whilst they were confined in jail together, that he "had given one John Watkins $3 to buy certain combustible fluids with which to burn the said factory." At the trial the prisoner demurred to the indictment, sought to impeach the credit of this witness by cross-examination and independent evidence, filed fourteen bills of exceptions to the rulings of the court, moved in arrest of judgment and for a new trial, and contended that the offence of burning a tobacco factory was an offence, not under the said 3d section, but under the 5th section of the said act, which allowed the jury discretion to punish with stripes and a fine. The circuit judge having refused, one of the judges of this court granted the prisoner a writ of error.

*Brockenbrough & Goggin,* for the appellant.

*The Attorney-General,* for the Commonwealth.

ANDERSON, J., delivered the opinion of the court.

This is an indictment against William Henry Terry Langhorne, the prisoner, for the felonious and malicious burning a tobacco factory, the property of Robert F. Robertson, which, with the property therein contained, was of the value of $30,000.

There was a demurrer to the indictment, which was overruled by the court, and the prisoner pleaded not guilty; upon which plea issue was joined. A jury was impaneled and sworn, and charged by the clerk under § 3 of ch. 3 of

the Acts of the General Assembly of 1877–8. The jury, after hearing the evidence and arguments of counsel, rendered a verdict against the prisoner of guilty, and fixed the term of his imprisonment in the penitentiary at nine years. The prisoner moved in arrest of judgment, and to set aside the verdict and grant him a new trial, which motions severally the court overruled, and the prisoner excepted. The demurrer will be considered in connection with the motions in arrest of judgment and for a new trial.

The case, so far as it is disclosed by the record, is confined to the testimony of only one witness, Ethward Penn *alias* Edward Abton, and his testimony only in relation to confessions, which he testified were made to him by the prisoner, which confessions are not recited, and the attempts made by the prisoner to impeach the truth and veracity of the witness, and to falsify his testimony in chief by means of cross-examination and independent evidence. What other witnesses testified in the cause, or what evidence was before the jury, the record does not show. It only shows that the jury agreed upon a verdict of guilty, and that it was sanctioned by the court who presided at the trial, who overruled the motions in arrest of judgment, and to set aside the verdict and for a new trial, and that not even a motion was made to set aside the verdict upon the ground that it was contrary to the evidence, or that the evidence was insufficient to warrant the verdict.

The case is before us then not upon its merits, but only upon the questions raised by the bills of exception, which we will proceed now to consider, and dispose of *seriatim.*

Bill of exceptions No. 1. The question objected to called for an answer as to a fact which was collateral and irrelevant to the issue, and immaterial, and could not be controverted by the party propounding the question. Its rejection was not error.

Exception No. 2. There is nothing in the bill of exceptions to show that the question was relevant or material. To justify the reversal of the ruling of the court below, the bill of exceptions must contain matter which shows that the ruling was erroneous. No error.

Exception No. 3. The question propounded by prisoner's counsel is: "Upon what charge he, the witness, had been arrested and was now under confinement in jail?" It is irrelevant and immaterial. It matters not what the charge was. It is no proof of guilt. And a party must be presumed to be innocent until his guilt is proved. Such testimony tended to create a new issue collateral to the main issue, or to pervert the minds of the jury, and was properly excluded.

Exception No. 4. The question is, "Did you not go to the house of Mr. James Harris before your arrest?" There is nothing in the bill of exceptions which shows its relevancy or materiality, and no declaration by counsel that they intend to follow it up with other inquiries or other evidence from which its relevancy or materiality will appear. In *Rowt's Adm'r* v. *Kile's Adm'r*, 1 Leigh, 217, the action was upon a bond which purported to have been signed and sealed by John Rowt, and to be payable to Fanny Kile. Issue was joined on the plea of *non est factum.* At a second trial defendant offered to prove by a witness, "that after the first trial, a bastard son of John Rowt by Fanny Kile, in conversation with the witness about the trial, said *his pen had not forgot to write.*" This testimony was objected to, and the court below would not permit it to go to the jury. Verdict and judgment were rendered for the plaintiff, and the court of appeals affirmed the judgment. Judge Carr said it was incumbent on the party seeking to reverse the judgment to show that there was error. There was no conversation stated which led to or followed the remark, and nothing to show in what way it could bear

upon the case.   We must hold that this bill of exceptions
was not well taken.

Exception No. 6.  The question is, "Were you not arrested,
tried, and convicted before a magistrate's court in the city
of Lynchburg?"   The question does not import that he
was convicted of any offence which would involve his
character for truth on oath; whether of a crime or misde-
meanor, a breach of the peace.   The question does not
imply that the witness had been guilty of an offence which
would affect his credibility on oath, and unless it was
shown by the question that the inquiry was in relation to
such a conviction, the prisoner was not entitled to an an-
swer.   We think that there is no error in the ruling of the
court on this ground, as set out in the bill of exceptions.
We might put it also upon other grounds.   See *Uhl's case,*
6 Gratt. 706.

Exception No. 7.  The question on cross-examination was,
"While in Lynchburg, did you not have some transactions
with Nias Crawford, John Wilson and a Mr. Frazier?"
There is nothing in the question, nor explanation in the
bill of exceptions, to show its relevancy, or that it had any
relevancy to the issue, or any bearing on the question of
the witness' credibilty.   It is liable to the same objection
we made to exception No. 4.

Exception No. 8.  The question is, on cross-examination,
"During your confinement in cell with prisoner, have you
not had a transaction of a money and property character
with him; and have you not been sued by the prisoner
within the last week?"   It does not say upon that trans-
action.   It does not appear from the bill of exceptions for
what purpose this question was asked.   The fact of the
witness having had a money and property transaction with
the prisoner, and that the latter had sued him, uncon-
nected with any other circumstances, can have no bearing
upon the issue whether the prisoner was guilty or not

guilty of burning the tobacco factory. Nor does it appear to have any connection with the confessions of the prisoner as testified by the witness, or any bearing upon the question of the truth of the witness' testimony in chief. And would seem to be liable to the objections mentioned in treating of exception No. 4. One man may have his mind biased against another by having a suit with him. Such controversies sometimes engender violent hostility between the litigants. But it is by no means universally or generally so. It is rarely the case that such controversies are the occasion of a bias on the mind of one against the other, such as would influence or pervert his testimony against him in a matter wholly disconnected with the subject of their controversy, so as to make the fact merely of the pending suit between them evidence to discredit in any measure his testimony against him. The proper question to put to the witness is that which was permitted by the court to be asked him—"Is there any ill feeling on your part (witness' part) to prisoner, growing out of any transaction had with him?" If he answered in the negative, it is by no means clear that the prisoner would be allowed to go into such evidence to contradict him. He would not be contradicted merely by showing the fact that he had sued him, and that such suit was pending. It would be necessary for him to show the character of the suit; the character of his allegations against the witness; that they were of a character to exasperate his feelings, and to engender feelings of hostility in his breast. And if he was allowed to do that, the witness must be allowed to reply and to show, if he could, that his accusations were false, and that when he gave his testimony in chief he had no knowledge that he had instituted such a suit against him, in which he had made such allegations. The mere fact of the pendency of a suit against the witness by the prisoner, would not imply a bias against him, which could be relied on to contradict

his affirmation that he had no bias growing out of any transaction he had had with him; nor would the existence of a suit merely, in reference to a matter wholly disconnected with the matter in issue, upon which his testimony had been given, be a circumstance to be relied on for discrediting his testimony.

If evidence of that character could be introduced to discredit a witness, where is the limit to the introduction of evidence of collateral facts to discredit a witness? If A is called upon to give testimony against B, and, in order to discredit his testimony, B is allowed to prove that he had had a money transaction with him and had brought suit against him, where are we to stop? There are a hundred different ways by which men may be brought in collisions as much calculated to create a bias on the mind of one against the other as the pendency ordinarily of a suit between them. It is not the mere pendency of a suit between them, but the character of the suit, which may show a bias, and it is agreed that the character of the suit can not be gone into.

Two men are each desirous of acquiring a certain property which is offered in market, and they bid for it with a spirit of rivalry against each other. As well might it be said that such a contest would bias the testimony of one against the other in a matter which had no connection with the contest for the property, and might be introduced in evidence to discredit his testimony, as a law suit between them.

Or two merchants in the same town are prosecuting their business. They are both industrious and enterprising, and are pushing their business with energy, and a rivalry exists between them. Would that be a circumstance to be relied on in evidence to discredit the testimony of one against the other in a matter which had no connection with their business?

Cases might be multiplied almost *ad infinitum* in the daily affairs of life, where competition and rivalry exists between men which would disqualify them for giving impartial testimony against each other, as much as the pendency of a suit between them. And if such competition can be relied on to discredit the testimony of one against the other, in suits at law, wholly disconnected with the subject of their rivalry or competition, there would be no end to collateral issues in suits and criminal prosecutions, and it would go far to impair confidence in human testimony.

"When a witness is cross-examined on a matter collateral to the issue, he cannot, as to his answer, be subsequently contradicted by the party putting the question." "This," the author says, "is a settled rule of practice, in order to avoid interminable multiplication of issues, and the test (he says), whether the fact inquired of is collateral is this, would the cross-examining party be entitled to prove it as part of his case tending to establish his plea?" 1 Whart. Law of Evidence, § 559. According to this test, the facts sought to be disclosed on cross-examination in this case were collateral, and the witness' answer could not be contradicted. "A witness may be asked whether he has not a strong bias or interest in the case, and, if he denies such interest or bias, he may be contradicted by evidence *of his own* statements, or other implicatory acts." *Ibid*, § 561. But "particular independent facts cannot be put in evidence, though bearing on the question of veracity, for the purpose of attacking his character for truth or veracity." *Ibid*, § 562. "It is competent, ground being first duly laid by cross-examination, to impeach a witness by showing his bias." But "when the object is to prove hostile declarations or acts, the witness must be first cross-examined as to such declarations or acts so that he may have an opportunity for explanation." *Ibid*, § 566. "The rule which requires the attention of the wit-

ness to be specially drawn to the circumstances in respect of which it is proposed to impeach his credit by independent evidence, is not confined to the case where it is alleged the witness made contradictory statements, but extends alike to all cases where declarations made by a witness, or acts done by him, are tendered in evidence with a view of either contradicting his testimony in chief, or of proving that he is a corrupt witness." 2 Taylor on Evidence, § 1451.

We think that the prisoner could have attained every legitimate object of his inquiry by putting the question to the witness which the court allowed, and we would not reverse the judgment upon any ground set out in this bill of exceptions.

Exception No. 9. Question: "You are now shown a copy of a deed (which is set out with the certificates of acknowledgment and recordation) purporting to be a deed from prisoner, Terry Langhorne, to you, dated 13th December, 1881, whereby is conveyed certain real estate for the pretended consideration of $1,540. State if you ever in point of fact gave the prisoner anything for the property here conveyed?" For anything that appears in the bill of exception this question was wholly irrelevant to the issue and immaterial, and had no bearing upon the question of the witness' credibility. The court did not err in sustaining the Commonwealth's objection.

Exception No. 10. Question: "You are here shown two blank checks, the one marked Exhibit 'O,' 1065, and the other Exhibit 'O,' 500 (purporting to be unsigned checks on the Virginia Savings Bank of Lynchburg, with dates, number, name of payee, and amount, all blank, are set out), state if you know anything about these blank checks; and if so, state if you did not pass them to the prisoner as the consideration and payment for certain real estate conveyed by him to you since you have been confined with him in jail?"

"It is competent in order to discredit a witness to offer evidence attacking his character for truth and veracity. Particular independent facts, though bearing on the question of veracity, cannot, however, be put in evidence for this purpose." 1 Whart. Law of Evidence, § 562.

"No question respecting any fact irrelevant to the issue can be put to a witness on cross-examination for the mere purpose *of impeaching his credit by contradicting him*. And if any such question be inadvertently put and answered, the answer of the witness will be *conclusive*." 2 Taylor on Evidence, § 1435. The same doctrine is enunciated by Greenleaf. He says: "In general, the rule is that upon examination to try the credit of the witness only general questions can be put; and he cannot be asked as to any collateral independent fact merely with a view to contradict him afterwards by calling another witness. And (he says) only general questions can be put." Greenl. Evidence, 455.

If the witness had procured the execution of the deed of conveyance to him upon such a false pretense, he was liable to a criminal prosecution. And the same eminent writer, John Pitt Taylor, says (2 Taylor Ev. § 1453): "Where the answers would have a tendency to expose the witness, or, as it seems, the husband or wife of the witness, to any kind of criminal charge, whether in the common law or ecclesiastical courts, or to a *penalty or forfeiture* of any nature whatsoever, the witness is not compellable to answer. This rule, which is of great antiquity (he says), applies equally to parties and to witnesses, and it is now uniformly recognized by all British tribunals, whether civil or criminal. No party can be compelled to discover that which, if answered, would tend to subject him to any punishment, penalty, forfeiture. or ecclesiastical censure, however material the answer may be to his adversary's case. Neither will witnesses be forced to answer questions or interroga-

tories of a like tendency; and, indeed, if any such inter-. rogatories be administered, they will, on application to the court, be struck out. This doctrine prevails in the spiritual courts, and is part and parcel of the law of Scotland." And it is the law of America. Greenleaf says: "The authorities are exceedingly clear that the witness is not bound to answer." 1 Greenl. Ev. § 451.

Numerous authorities might be cited which clearly establish that if the fact to which the witness is interrogated forms but a *single remote link* in the chain of testimony, which *may* implicate him in a crime or misdemeanor, or expose him to a penalty or forfeiture, he is not bound to answer. 2 Taylor on Ev. § 1454; 1 Greenleaf on Ev. § 451, and cases cited. We conclude, therefore, upon all the foregoing grounds, that the 10th bill of exceptions was not well taken.

Exception No. 11. The counsel of the prisoner propounded to each of the witnesses (Samuel G. Wingfield, mayor of Lynchburg; Paul Ford, a member of the police force; and to one Fazier) the following question: "Do you know the general character of the witness (Penn) for truth and veracity in the city of Lynchburg of your own knowledge, or the general estimate which he is held by that community in that respect?" The court modified the question as follows: "Are you acquainted with the general character of the witness, Edward Penn, *alias* Edward Abton, for truth and veracity, in the neighborhood in which he resides or recently resided?" We think the court did not err in requiring such modification of the question.

The question set out in bill of exceptions No. 5, which we passed over, is to the same effect, and the ruling of the court the same, which we think was right.

Exception No. 12. The question was put to John Watkins, who was introduced by prisoner as a witness: "State if you and Terry Langhorne, the prisoner, ever made any bargain

to burn the factory of Robertson, Jordan & Co.?" The witness had not testified that they had made a bargain to burn the factory, but only that the prisoner told him they had. The answer of Watkins to the question could not, if he said they had not, be in conflict with what the witness testified. The denial of one that he was not a confederate in the burning, could not be given in evidence to discredit the witness, who merely testified that the *prisoner told* him that he was a confederate in the burning. We think that it was not error in the court to disallow the question, though we think it was not worth while for the Commonwealth to have made an issue upon it, as the answer, which could hardly have been expected to be but one way, could have done her or her witness no harm.

Exception No. 13 was waived. No. 14 shows that prisoner offered in evidence, as tending to show the interestedness of said witness, Penn, in the conviction of the prisoner, and the motives influencing him in his testimony, a paper purporting to be a copy of a bill in chancery by the prisoner Langhorne against said Penn, the witness, addressed to the Honorable G. A. Wingfield, judge of the circuit court of Bedford county, and two other papers, as exhibits with the bill.

It does not appear when said bill was filed, or that it had been filed at all, in said circuit court. It is not certified by the clerk of the circuit court to be a copy of any record of said court. There is no date to the bill, but it appears to have been sworn to by the prisoner, on the 2d of January, 1882, not quite a month subsequent to the date of the indictment against him, which is December 5, 1881. It does not appear that any process had been served on Penn, or that he had been served with notice of the filing of the bill, or that he had answered the same, or had any knowledge of a suit or of the filing of the bill against him by the prisoner until after he had given his testimony in chief.

The bill is the prisoner's statement of a transaction between him and the witness while they were together inmates of the jail, which, if true, would brand the witness with infamy, subject him to a criminal prosecution and infamous punishment. It may be an honest representation of facts, or it may have been gotten up by the prisoner to destroy the effect of any disclosures which Penn might be called on to make against him in the prosecution then pending. If it could be introduced in evidence, it is only the testimony of the prisoner in his own favor in relation to collateral facts, to be used on the trial of the prosecution against him to destroy the testimony of Penn against him. It is at best only testimony of the prisoner in his own behalf. It not appearing that the witness had any knowledge of the charges made against him in said bill or of the existence of the suit until after he had given his testimony in chief, it does not appear that it could have biased him in his testimony; and we are of the opinion that the court below did not err in excluding it from the jury.

We have now considered the bills of exceptions to the rulings of the court before verdict separately. If they were all considered together, we do not perceive that it could change the result attained in considering them separately. Each bill of exceptions presents a distinct proposition and makes no reference to the preceding bill or bills. And it has been repeatedly decided by this court that facts stated in one bill of exceptions cannot be noticed by an appellate court in considering another, unless the first bill of exceptions should be referred to in the second, and adopted as part of the second. 1 Rob. (old) Practice, p. 347, and cases cited. This rule has been adhered to in subsequent cases.

With regard to the demurrer and the exceptions to the rulings of the court on the motions in arrest of judgment,

and to set aside the verdict and grant a new trial, we are of opinion that the court did not err in overruling the demurrer to the indictment. The charge given by the clerk to the jury was not given until after the demurrer was overruled, and could not have been considered in overruling it. No objection was made by the prisoner to the charge given by the clerk to the jury, and no exception was taken to it so as to make it a part of the record, and it is questionable whether it could therefore be considered on the motion in arrest of judgment. But waiving that and considering it both on that motion, and upon the motion to set aside the verdict, we are of opinion that there is no error in the rulings of the court below; that the prisoner was properly prosecuted under the third section for the burning of a tobacco factory, which is a manufactory as named in the statute.

Upon the whole we are of opinion to affirm the judgment of the court below.

STAPLES, J., concurred in the decision, but dissented on some of the points.

JUDGMENT AFFIRMED.