# Wytheville

GEORGE W. BURFORD v. COMMONWEALTH OF VIRGINIA.

June 8, 1942.

Record No. 2540.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Edmunds, Whitehead, Baldwin & Graves* and *Whitehead & Marshall*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Carrington Thompson, Special Assistant*, for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

This is a writ of error to a judgment entered on the verdict of a jury convicting George W. Burford of a felony in unlawfully wounding with intent to maim, disfigure, disable and kill Theron W. Thompson. The petition filed in this court assigned ten errors alleged to have been committed by the lower court in the trial.

The concession made by counsel for the accused in the oral argument, to the effect that the evidence for the Commonwealth was sufficient to sustain the verdict, relieves this court of the necessity of discussing the assignments of error numbered one and two.

The third assignment of error seems to be based on a motion made by the attorney for the accused after the jury was impanelled and sworn. The motion and exception are found in the order refusing to set aside the verdict, reading as follows: "That the court erred in not quashing or dis-

missing the indictment and charge against the defendant, as the defendant had, on January 7, 1941, been tried before the trial justice of Bedford county, Virginia, on the same identical charge and was acquitted, and therefore by putting the defendant on trial, he was put in double jeopardy."

■ The Attorney General, in his brief, very pertinently states: "We have been unable to find the warrant containing the charge against Burford before the trial justice, or any record of what disposition was made of this warrant. None of the facts appears to have been included in a formal written plea presented in the lower court. These circumstances preclude the appellate court from reviewing this alleged error, * * * ."

■ This court, through Judge Campbell, now Chief Justice, after a review of the former cases on the question, said: "We are, therefore, of the opinion that a plea which raises the issue of former jeopardy must be in writing." *DeBoer* v. *Commonwealth*, 147 Va. 671, 675, 137 S. E. 469.

However, counsel earnestly contend that the acquittal of the accused on a warrant charging assault and battery constitutes a bar, if properly pleaded, to prosecution on an indictment returned by a grand jury charging the accused with the commission of a felony in which the same assault and battery were necessary elements.

■■ It was thought that this question had been finally determined in the case of *Murphy* v. *Commonwealth*, 23 Gratt. (64 Va.) 960, 963, where this is said: "And as the assault and battery charged in the indictment in this case, and of which the accused was convicted by the verdict and judgment, was felonious, therefore a justice of the peace had no jurisdiction of the case; and any judgment which may have been rendered by a justice as alleged in said plea is null and void, and was no bar to the prosecution for the felony.

"But even if the accused had been indicted and convicted of a mere assault and battery, in the county court having jurisdiction of such an offence generally, the conviction would not have been a bar to an indictment for a felony in the perpetration of which the assault and battery was com-

mitted. The misdemeanor in such case is considered as merged in the felony. 'Where the prisoner has been convicted of a misdemeanor, and is afterwards indicted for a felony, the two offences have been considered so essentially distinct, that a conviction of one was deemed no legal bar to an indictment of the other.' "

Section 8 of the Constitution provides: "He (any person) shall not be deprived of life or liberty, except by the law of the land or the judgment of his peers; * * * ." Section 106 provides: "Indictments shall conclude 'against the peace and dignity of the Commonwealth.' " These provisions of the present Constitution are the same that were in force in 1868 when this court decided the case of *Matthews* v. *Commonwealth*, 18 Gratt. (59 Va.) 989. The question presented was whether or not, under the act of April 27, 1867, a person could be put upon his trial on a charge of having committed a felony in the absence of a presentment or indictment returned by a grand jury. Speaking to the point at page 997, this is said: "There is in the Constitution of Virginia no such express provision. The only express reference which it makes to the subject of indictments, is in a provision which was engrafted on the original constitution, and has been literally copied into every amended constitution since; and which declares that 'indictments shall conclude against the peace and dignity of the Commonwealth.' Constitution of 1851, art. 6, sec. 24, Code p. 54. There are some provisions in the Bill of Rights which had their origin in Magna Charta, which have been supposed to embrace, among other things, a declaration that no citizen shall be put upon trial for felony unless upon an indictment found by a grand jury. This is certainly the rule of the common law, which authorizes the Attorney General to exhibit an ex-officio information for any misdemeanor whatever, but not for felony; it being required in all cases of felony that the accusation should be warranted by the oath of twelve men before the defendant can be put to answer it."

The court, after stating the applicable common law rule, construed the statute to be in accord therewith and expressly declined to pass on the power of the legislature to enact a

statute which would put a person upon his trial for a felony in the absence of an indictment returned by a grand jury.

It is well to note that since the decision in the *Murphy case, supra,* another provision has been added to section 8 of the Constitution, reading: "Laws may be enacted providing for the trial of offenses not felonious by a justice of the peace or other inferior tribunal without a jury, preserving the right of the accused to an appeal to and a trial by jury in some court of record having original criminal jurisdiction." See *Mickens* v. *Commonwealth,* 178 Va. 273, 16 S. E. (2d) 641.

It is not necessary in this case to pass upon the constitutional question suggested, as the pertinent part of Code, section 4866, provides: " * * *; but no person shall be put upon trial for any felony, unless an indictment shall have first been found by a grand jury in a court of competent jurisdiction."

The statutes, abolishing the authority of the justices of the peace to try misdemeanors and clothing the trial justices with such authority, do not expressly or by implication clothe the trial justices with any authority to try persons charged with felonies. The authority of trial justices in criminal cases is the same as that formerly exercised by justices of the peace, and is found in Code, sections 4845 and 4846, which statutes have not been changed since 1877 except for a slight amendment adopted in 1895-6.

The trial justice of Bedford county had no jurisdiction to try the accused for the commission of a felony. As stated by the Attorney General, the trial justice, on his conclusion from the evidence, could have pronounced one of three judgments: (1) He might have dismissed the warrant entirely; (2) he might have bound the accused over to appear before the grand jury at the next term of the circuit court; or (3) he might have convicted the accused of a misdemeanor. If the crime is in fact a felony, no judgment of the trial justice constitutes a bar to further prosecution for the offense if a grand jury returns an indictment charging the accused with the commission of the felony.

"An acquittal or a conviction by a justice of the peace,

a police magistrate, or other court not having jurisdiction of the offense is not former jeopardy, and is no bar to a subsequent trial in a court which has jurisdiction." 22 C. J. S. 378. See *Bailey's Case*, 1 Va. Cas. (3 Va.) 261; *Dulin v. Lillard*, 91 Va. 718, 722, 20 S. E. 821; *Seay v. Commonwealth*, 155 Va. 1087, 156 S. E. 574; *Rosser v. Commonwealth*, 159 Va. 1028, 167 S. E. 257; *Malouf v. Roanoke*, 177 Va. 846, 13 S. E. (2d) 319.

The fourth assignment of error is to the action of the trial court in excepting Theron W. Thompson from the agreement or order excluding witnesses from the courtroom during the trial.

Code, section 4906, provides: "In the trial of all criminal cases, whether the same be felony or misdemeanor cases, the court may, in its discretion, exclude from the trial any or all persons whose presence is not deemed necessary."

■ In *United Dentists v. Commonwealth*, 162 Va. 347, 352, 173 S. E. 508, it was held that the trial court, in civil cases, had power, in the exercise of sound discretion to exclude or to sequestrate witnesses without statutory authority.

While there were only three eyewitnesses to the beginning of the difficulty between the accused and Thompson, twenty-five witnesses were examined. The inference is that the Commonwealth's attorney desired the prosecuting witness to remain in the courtroom for suggestions and assistance in the introduction of testimony. Dr. Elisha Barksdale, the surgeon who treated Thompson, was the first witness called. His testimony, in the main, was confined to the extent of the injuries inflicted upon Thompson. Immediately thereafter Thompson was introduced as a witness. It is true that, in rebuttal, he was recalled to contradict the accused on a matter of minor importance.

■ The general rule is that the trial court, in the exercise of a sound discretion, may permit the prosecuting witness to remain in the courtroom during the trial. Some courts require the prosecution, as a condition for this exemption, to call the person permitted to remain in the courtroom as its first witness. See *Smartt v. State*, 112 Tenn. (4 Cates) 539, 80 S. W. 586.

■ ■ As both the common law and the statute give the trial court discretion in the matter, this court will not reverse its ruling unless the record discloses an abuse of that discretion. A careful examination of the record in this case does not disclose that the exemption of the prosecuting witness from the operation of the rule was prejudicial to the accused. For a discussion of this question, see 23 C. J. S., Criminal Law, sec. 1010, *et seq.*

[■ The fifth assignment of error is based on the following incident. L. H. Justice, a witness introduced by the accused, testified that the reputation of the accused for truth and veracity was good during the time that he lived in Amherst county. On cross-examination, the attorney for the Commonwealth asked justice this question: "Do you know that at the time he opened, operated a business in Amherst he was on parole from the Federal Board?" Before the witness answered the question, objection was interposed. In the absence of the jury the attorney for the accused moved for a mistrial on the ground that the question was improper. This motion was overruled. The witness did not answer the question, and it was not repeated when the proceedings before the jury were resumed. It thus appears that the only ruling of the trial court presented is its refusal to sustain a motion to declare a mistrial on the ground stated. There is no merit in this assignment.

The sixth assignment of error presents the dominant question in the case namely, whether conviction of a crime in a Federal court, which crime is a felony under the Federal statute but which is declared to be a misdemeanor by the Virginia statute, is admissible in evidence under Code, sec. 4779.

After a lengthy conference between the attorneys with the court in chambers, the following motion was submitted: "On behalf of the Commonwealth we move the privilege of proving that the accused has been convicted once in the State court of a felony, the said conviction being in the Corporation Court of Lynchburg, Virginia, upon a felonious charge of having a second time violated the former prohibition law of this State; and also that he has been con-

victed of a felony in the United States Court for the Western District of Virginia upon the charge of removing and concealing untaxed liquor." Objection was duly interposed and overruled.

It is conceded that the conviction of the accused in the Corporation Court of the city of Lynchburg for violation of the prohibition law then in force was a felony, and admissible in evidence to affect the credibility of the accused under Code, sec. 4779. It is also conceded that the conviction of the accused in the Federal court was on a charge defined by the Federal statute to be a felony. The same act, under section 50 of the Alcoholic Beverage Control Act of Virginia (Acts 1934, p. 127), is declared to be a misdemeanor.

Prior to the revision of the Code in 1919, a person convicted of a felony was not a competent witness unless such person had been pardoned or punished therefor, and a person convicted of perjury was not competent even though pardoned or punished. Under these provisions this court held, in *Samuels* v. *Commonwealth*, 110 Va. 901, 903, 66 S. E. 222, that a conviction of perjury in the Federal court did not disqualify the person as a witness in the courts of this Commonwealth. Speaking for the court, Judge Cardwell said: "We do not think it at all material that the Federal and State enactments impose different penalties for perjury, but do consider it conclusive of this case that the Federal statute was intended and has the effect only to disqualify persons convicted of perjury in the Federal courts to testify as a witness in the courts of the United States, i. e., in the Federal courts; and that the Virginia statutes were intended and have the effect only to disqualify persons convicted of perjury in a court of this State to testify as a witness thereafter in the courts of this State. * * *. Had the legislature intended that the statute should have any other meaning or effect, doubtless it would by the use of apt words have made the intent plain and unmistakable and not left it to doubtful interpretation, since it is well settled that penal statutes are to be strictly construed, and cannot be enlarged or their effect extended by construction."

In *Davidson* v. *Watts*, 111 Va. 394, 69 S. E. 328, decided

in 1910, it was held that a person who had been convicted of grand larceny and had served the punishment therefor was, by the statute then in force, a competent witness, but if the crime for which he had been convicted involved "his character for truth," the fact of conviction was admissible for the purpose of impeachment. See *Langhorne* v. *Commonwealth*, 76 Va. 1012.

In *Bell* v. *Commonwealth*, 167 Va. 526, 189 S. E. 441, the question presented was whether or not a conviction of petit larceny was admissible on cross-examination to impeach a witness. Judge Holt, after an erudite review of the history of the statute and the Virginia cases construing it, said: "So far as they affect this case, none of the statutes antedating the Code of 1919 differ from each other. They make men who have been convicted and punished for felony competent witnesses and leave them as such to the general law of evidence. Former relevant convictions of felonies could be shown, but not those which could have no bearing upon the case at issue. It would have been an abuse of discretion to show that one on trial for larceny had before then been convicted of involuntary manslaughter, done in hot blood and in sudden combat.

"In *Davidson* v. *Watts, supra,* evidence of a former conviction was admitted, not because it was a felonious offense for the court said 'there are some felonious offenses, which do not involve the perpetrator's character for truth,' but because of the nature of the offense; there the former conviction appeared to have been for grand larceny, and the court in commenting upon it further said 'there are few crimes which imply a greater dereliction of moral principles than stealing.' This dereliction does not rest upon the amount stolen but upon the fact that a theft has been committed. One who steals a flock of sheep is not more derelict than one who steals a sheep a day until he is too old to walk around.

\*　　　　\*　　　　\*　　　　\*

"There was no statute in Virginia which governs this practice and so on principle we are thrown back to common law and to the general rules of evidence. And this is true both

as to felonies and as to misdemeanors. Evidence of larceny involves 'the perpetrator's character for truth.' "

The statute (Code, sec. 4779) expressly declares that "Conviction of felony or perjury * * * may be shown in evidence to affect his credit." If the accused had been tried for transporting liquor without having paid a tax thereon under the Virginia statute, he could have been convicted of no higher offense than a misdemeanor. However, for the same act, he was tried and convicted in the Federal court of a felony. In the former event, under the general rules of evidence in force in this jurisdiction, the fact of conviction would not have been admissible. The question is: Shall the courts of this Commonwealth attach more odium to a criminal act when a conviction therefor is obtained in the Federal court than would attach if the conviction were obtained in a State court?

As said in *Bell* v. *Commonwealth*, *supra*, at page 538: "We have held, independent of statute, that conviction for an infamous crime might be shown by way of impeachment. The reason for such rule lies in the nature of the crime itself and not in the *quantum* of punishment suffered. The Legislature has the power to abolish capital punishment and to do away with its penitentiary. * * * . As a matter of fact the Legislature has nowhere undertaken to deal with the moral status of such an offender. Indeed it could not, though it could change the legal effect of such delinquencies. So far as punishments and disabilities are concerned a distinction has been made. Punishments vary and statutory disabilities are imposed upon felons which misdemeanants do not have to bear, but the law of evidence has been left untouched, save only in this, felons who were incompetent witnesses are now competent, subject to conditions directly imposed.

"The Virginia statutes, cited *supra*, dealt only with the competency of convict felons, who, without them, were wholly incompetent. There was no occasion to deal with misdemeanors for misdemeanant convicts were already competent witnesses, subject, as we have seen, to impeachment."

In *Harold* v. *Commonwealth*, 147 Va. 617, 622, 136 S. E. 658, this court, through Judge Burks, said: "What-

ever may be the rule elsewhere, it is well settled in this State that the character of a witness for veracity cannot be impeached by proof of a prior conviction of crime, unless the crime be one which involved the character of the witness for veracity. Nor can a witness be impeached by proof of collateral facts irrelevant to the issue, though they have a bearing on the question of veracity. *Uhl* v. *Com.*, 6 Gratt. (47 Va.) 706; *Langhorne* v. *Com.*, 76 Va. 1016; *Cutchin* v. *Roanoke,* 113 Va. 453, 74 S. E. 403; *Allen* v. *Com.*, 122 Va. 834, 94 S. E. 783." See Wigmore on Evidence, Vol. III, secs. 926, 980, *et seq.*

The Legislature of Virginia has not declared the transportation or removal of intoxicating liquor, without paying the tax required, a crime of such magnitude that it is embraced within the statutory definition of a felony. Even if the Legislature had so declared, it would not change the nature of the crime. On the fact of the record it does not appear that the charge upon which the accused was convicted in the Federal court involved moral turpitude, or, in the words of Judge Burks, it is not such "a crime as involves 'the character of the witness for veracity.' " This assignment of error is well taken.

The trial court refused to admit in evidence the trial justice's judgment of conviction of Thompson, the prosecuting witness, for his part in the difficulty upon which this prosecution of the accused is based. This ruling is attacked in the seventh assignment of error.

It appears from the record that when the trial justice investigated the difficulty and fight between the accused and Thompson, he dismissed the case against the accused and convicted Thompson. The judgment of conviction was appealed. At the time of the trial of this prosecution, the appeal was still pending in the Circuit Court. We have held that "The effect of the appeal from the police justice's decision was not only to deprive him of further jurisdiction but to annul his judgment of conviction." *Malouf* v. *Roanoke,* 177 Va. 846, 855, 13 S. E. (2d) 319. See *Peak* v. *Commonwealth,* 171 Va. 535, 199 S. E. 473; *Green* v. *Commonwealth,* 170 Va. 619, 195 S. E. 520; *Gemmell* v.

*Svea Fire, etc., Ins. Co.,* 166 Va. 95, 184 S. E. 457; *Pflaster v. Berryville,* 157 Va. 859, 161 S. E. 58; *Seay* v. *Commonwealth,* 155 Va. 1087, 156 S. E. 574. There is no merit in this contention.

The next assignment of error is to the action of the trial court in refusing to admit in evidence specific acts of violence and convictions of the prosecuting witness for threats, and assaults and batteries previously made upon third parties.

██ ██ Thompson, or cross-examination, was asked concerning specific acts of violence and his convictions for threats and assaults and batteries upon third parties. He denied that he had made the threats or had been convicted. We have stated heretofore that unless the misdemeanor charged involved moral turpitude, a judgment of conviction is not relevant to impeach the witness. Assault and battery is not a crime involving moral turpitude and hence a conviction therefor is not relevant for purposes of impeachment. When this evidence was first offered, the accused had introduced no evidence tending to prove self-defense. Clearly, then, at this stage of the trial, the issue as to the truth of the acts of violence or convictions of the witness was collateral. "If a question as to collateral fact be put to a witness for the purpose of discrediting his testimony, his answer must be taken as conclusive, and no evidence can be afterwards admitted to contradict it." III Wigmore on Evidence, 3d ed., footnote at page 657.

Later in the trial, and after evidence had been introduced tending to prove that the accused acted in self-defense when he inflicted the wounds upon Thompson, again the question of the admissibility of this evidence was raised. At this time the trial court expressly stated that specific instances tending to show that the prosecuting witness was a dangerous or fighting man, and specific instances of convictions for assaults and batteries upon third persons, would be admitted. For some unexplained reason, the attorneys for the accused did not avail themselves of the opportunity of this ruling to introduce the alleged evidence.

██ As Dean Wigmore states, this class of evidence is admissible "to show such conduct as would naturally excite

apprehension, whether it objectively indicates a fixed trait of character or not. Certainly all analogies of the law (apart from the common sense of the situation) favor such evidence; * * * particular deeds of unscrupulous violence may well be deemed relevant to show an apprehension of violence from such a person. The true solution is to exercise a discretion, and to admit such facts when common sense tells us that they could legitimately affect a defendant's apprehensions." I Wigmore on Evidence, 2d ed., page 521.

"Such evidence is admissible only when the defendant has interposed a plea of self-defense (* * *), and when a proper foundation is laid by proof of some overt act justifying such defense (* * *). The trial court should exercise a sound legal discretion in determining whether or not the proper foundation has been laid for the introduction of the offered testimony." *State* v. *Jennings*, 96 Mont. 80, 28 P. (2d) 448, 121 A. L. R. 375.

In *Harrison* v. *Commonwealth*, 79 Va. 374, 379, 52 Am. Rep. 634, this is said: "And where no case of self-defence has been made out, it has been decided, in numerous cases, that such evidence was inadmissible. And in such a case, when the prisoner himself made an attack and killed his antagonist, without other danger to himself than such as he had himself deliberately sought by his own violent and unlawful conduct, such evidence is properly excluded."

These principles were restated and applied in *Rasnake* v. *Commonwealth*, 135 Va. 677, 115 S. E. 543. It is quite true that in that case, after the trial court had permitted a number of specific instances of violence to be introduced, it excluded one specific act. On review by this court, it was held that the number of specific acts of violence of the deceased or victim which might be introduced was a matter within the sound discretion of the trial court, and that, under the circumstances, refusal to admit one specific act to be introduced was harmless error.

The record clearly shows that the trial court applied these principles, first, in refusing to admit the evidence when it was offered for the sole purpose of impeaching the wit-

ness, and, later, ruling it was relevant on the issue of self-defense.

Assignments of error numbered nine and ten involved the giving of five instructions for the Commonwealth and refusing to give nine instructions requested by the accused. Seven instructions were given for the prosecution and eight for the defendant, which fairly submitted the theories of the case to the jury. The fourteen objections and exceptions raised to the instructions are not well taken and are not of sufficient importance to justify a discussion of them.

Inasmuch as the evidence on material issues is in serious conflict, we cannot say that the admission of the judgment of conviction of the accused in the Federal court was harmless. It follows that the judgment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*