COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, Clements and McClanahan
Argued at Richmond, Virginia


GORDON M. WITTERMAN
                                              MEMORANDUM OPINION* BY
v.        Record No. 2655-03-2            JUDGE ELIZABETH A. McCLANAHAN
                                                   JULY 19, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
John W. Scott, Jr., Judge

        Frederick J. Getty (Michael A. Hyman; Getty & Associates, P.C.,
        on briefs), for appellant.

        Deana A. Malek, Assistant Attorney General (Jerry W. Kilgore,
        Attorney General, on brief), for appellee.


        Gordon M. Witterman appeals his conviction for unlawful wounding in violation of Code

§ 18.2-51.  The issues raised are whether the trial court erred when it:  (1) disallowed evidence of

prior specific acts of violence by the victim; and, (2) sustained the Commonwealth's objection to

evidence of the victim's long-term alcohol use.  For the reasons that follow, we affirm the

decision of the trial court.

I.  BACKGROUND

        Gordon M. Witterman, Kathleen Dinagen, and James Pratt participated in a five-day

binge at the apartment shared by Dinagen and Pratt, drinking alcohol and using crack cocaine

together.  On the last day of the binge, around midnight, the group stopped smoking crack

cocaine and an argument ensued between Witterman and Dinagen.  The argument culminated in

Witterman hitting Dinagen with a board.  Their descriptions of the circumstances leading to the

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

altercation differ. Dinagen testified that both parties argued for approximately 45 minutes, and then, later that morning, Witterman walked into the room where Dinagen was sitting, called her name, and hit her several times in the head with a board. Pratt entered the room and fought with Witterman to prevent him from striking Dinagen again. Witterman recounted that Dinagen instigated the fight by verbally provoking him, then moved toward him and threatened him with a shiny object he believed to be a pair of scissors or a knife. Witterman contended that he swung the board in self-defense.

Throughout the trial, Witterman's counsel tried to elicit evidence from Dinagen, from Witterman, and from others, concerning Dinagen's reputation for violence and specific acts of violence she allegedly committed in the past. Counsel also tried to elicit from witnesses that Dinagen became violent when consuming drugs and alcohol.

During cross-examination of Dinagen, Witterman attempted to introduce evidence of Dinagen's prior specific acts of violence when she becomes intoxicated and her long history of such, for the purpose of showing her propensity for violence. The trial court ruled that Witterman must lay a foundation for such testimony and show proximity between the events over the five-day binge and the prior specific acts of violence. The court ruled it would allow Witterman's counsel to question Dinagen about her alcohol use during the five-day period preceding the offense, but found "what took place X number of years ago" was irrelevant.

At trial, Witterman's testimony that alcohol caused a change in Dinagen's character and that she became violent "when she was either drinking heavily or doing drugs" was admitted. Witterman also testified that in the past, Dinagen had hit him, kicked him, and thrown an object at him. Witterman's testimony that Dinagen told him about cutting a guy from shoulder to shoulder, holding a gun to a woman's head, and stabbing another woman in the back was also admitted.

With respect to witnesses Todd Elliott, Michael Cooper, and Dennis Heflin, Witterman sought to elicit testimony regarding specific acts of violence committed by Dinagen. The Commonwealth objected, and the trial court allowed the witnesses to answer a "yes" or "no" question about whether they experienced her violence, but the witnesses were not allowed to explain or elaborate on the specific acts of violence. The trial court also ruled that testimony by these witnesses about Dinagen's alcohol and/or drug use was irrelevant. Despite these rulings, Elliott testified that Dinagen committed an act of violence against him and that he had "seen her smack a man upside the head for drooling." Cooper testified that he had known Dinagen for 15 years. He stated that she "gets too violent." According to Cooper, that was why he "got away from her." Cooper stated that he had "seen her hit a boy in the head with a wine bottle for no reason at all." Heflin testified that he has known Dinagen for eight or nine years, that he had been at Pratt's house when Dinagen "was doing drugs" on several occasions, and that "there was a lot of drugs involved" throughout the last year. He stated that he has seen her act violently and explained that the reason he is "incarcerated right now" is because she recently acted violently toward him. Elliott, Cooper, and Heflin testified that Dinagen's reputation in the community for violence was bad.

Witterman made a proffer of the excluded evidence only with respect to Elliott's testimony. Witterman proffered that Elliott would have testified that, within 18 months of the underlying offense, he had used cocaine with Dinagen approximately 500 times and that during the course of the drug use, Elliott witnessed Dinagen's violence personally directed at him.

## II. ANALYSIS

### A. Cooper and Heflin Testimony

Witterman contends that the trial court erred when it disallowed Cooper's and Heflin's testimony about Dinagen's prior specific acts of violence. Witterman never proffered the

excluded testimony of Cooper and Heflin that allegedly would have supported the defendant's version of the events that took place. We cannot, therefore, discern whether such testimony would have supported Witterman's position that he felt threatened by Dinagen and that he hit her in the head with the board in self-defense.

When testimony is excluded before it is presented, the record must reflect a proper proffer showing what the testimony would have been. See Evans v. Commonwealth, 39 Va. App. 229, 572 S.E.2d 481 (2002). "Without such a proffer, [the appellate court] cannot determine the admissibility of the proposed testimony, and, if admissible, whether the court's exclusion of the evidence prejudiced [the party]." Holles v. Sunrise Terrace, 257 Va. 131, 135, 509 S.E.2d 494, 497 (1999); see also Lockhart v. Commonwealth, 34 Va. App. 329, 340, 542 S.E.2d 1, 6 (2001) ("[W]e will not consider testimony which the trial court has excluded before it was presented without a proper showing of what that testimony would have been."). "The fact that an objection has been made . . . is insufficient." Owens v. Commonwealth, 147 Va. 624, 630, 136 S.E. 765, 767 (1927). "[T]o successfully argue for reversal of a trial court's decision, an appellant must make a proffer that discloses the nature of the excluded evidence." Vinson v. Vinson, 41 Va. App. 675, 686, 588 S.E.2d 392, 398 (2003). Because there was no proffer of the testimony of Cooper and Heflin, we will not disturb the trial court's ruling.

### B. Elliott Testimony

On appeal, Witterman argues that the trial court erred in disallowing Elliott's testimony about Dinagen's prior specific acts of violence. During Elliott's testimony, he was asked if he had used drugs with Dinagen, to which the Commonwealth objected on relevance grounds. Witterman proffered that Elliott's testimony would have been that he used cocaine with Dinagen approximately 500 times in the last 18 months and that during the course of the drug use, he

witnessed her violence personally directed at him. Witterman sought to introduce this testimony to show that Dinagen's drug usage was linked to her violent behavior.

Although the proffer was sufficient with respect to Elliott's testimony, we find that any error in refusing to admit this specific testimony was harmless. Elliott did testify that he witnessed firsthand Dinagen's violence. He said: "I seen her smack a man upside the head for drooling." Elliott also testified that Dinagen committed an act of violence against him. Elliott, Cooper, and Heflin testified that Dinagen's reputation in the community for violence was bad. On cross-examination, Dinagen admitted being a user of crack cocaine, and she admitted using drugs and alcohol during the five-day period she was with Witterman and Pratt. She also described the effects those drugs had on her. The hospital's Emergency Department Note, which was admitted into evidence, reflected that Dinagen admitted being an alcoholic and that "she uses weed on the weekends." Moreover, Witterman and other witnesses provided testimony linking Dinagen's violence with intoxication. Based upon the admitted testimony of Elliott, the amount of evidence the jury received regarding Dinagen's reputation for violence, acts of violence committed against other persons, and excessive alcohol and drug usage (much of which came from Dinagen herself), any error in disallowing Elliott's proffered testimony was harmless.

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

C.  Dinagen testimony

During Dinagen's cross-examination, Witterman's counsel asked if she recalled assaulting people in the past.  The trial court sustained the Commonwealth's objection, after which Dinagen was asked if she recalled "assaulting David Carlton" and then asked if she recalled "having attacked Gordon --."  The trial court again sustained the Commonwealth's objections and required that a foundation be laid.  Evidence of a victim's character for violence "is admissible only when the defendant has interposed a plea of self-defense . . ., and when a proper foundation is laid by proof of some overt act justifying such defense."  Burford v. Commonwealth, 179 Va. 752, 767, 20 S.E.2d 509, 515 (1942).

At the time of the ruling, no evidence of self-defense had been presented so as to establish the foundation required to make Dinagen's character for violence relevant or admissible.  The defendant is allowed to introduce evidence of such propensity only when the defendant adduces evidence of self-defense.  Canipe v. Commonwealth, 25 Va. App. 629, 640, 491 S.E.2d 747, 752 (1997); see also Jordan v. Commonwealth, 219 Va. 852, 855, 252 S.E.2d 323, 325 (1979); Burford, 179 Va. at 767, 20 S.E.2d at 515 (stating that evidence of a victim's character for violence "is admissible only when the defendant has interposed a plea of self-defense . . ., and when a proper foundation is laid by proof of some overt act justifying such defense"); Mealy v. Commonwealth, 135 Va. 585, 596, 115 S.E. 528, 531 (1923) (stating that evidence of the victim's "quarrelsome, dangerous, and ferocious" character was not admissible "because there was no foundation in the case for the theory of self-defense"); Harrison v. Commonwealth, 79 Va. (4 Hans.) 374, 379 (1884) (stating that evidence of the victim's "brutal and ferocious" character is inadmissible "where no case of self-defense has been made out").

Witterman did not lay a proper foundation for self-defense before attempting to elicit the testimony.  A defendant must establish a foundation for self-defense *before* evidence of the

victim's character for aggression is admissible.  Canipe, 25 Va. App. at 640, 491 S.E.2d at 752.

The trial court did not err by excluding Dinagen's testimony about her prior acts of violence.

### D.  Expert Testimony on Link Between Dinagen's Alcohol Use and Her Violent Behavior

Witterman concedes that the trial court did not specifically rule that the defense needed an expert to introduce testimony regarding a nexus between Dinagen's alcohol use and her violent behavior.  Witterman instead argues that because the Commonwealth made a reference to expert witness opinion in its objection that the trial court impliedly ruled an expert was necessary.  We disagree.  The court specifically ruled that the long-term pattern of alcohol use was not relevant, but made no ruling on whether expert testimony was necessary.  Witterman also never responded to the Commonwealth's assertion that an expert was necessary to establish the relevancy of longstanding alcohol abuse.

Because the trial court never ruled on the expert testimony issue and because Witterman never objected to its failure to rule, there is no ruling for us to consider on appeal.  Johnson v. Commonwealth, 37 Va. App. 634, 645, 561 S.E.2d 1, 6 (2002) ("[A]s the argument was not properly presented to the trial court, appellant did not preserve this argument for appeal."); see also Scott v. Commonwealth, 31 Va. App. 461, 464-65, 524 S.E.2d 162, 164 (2000).  Rule 5A:18 states, "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  "Under Rule 5A:18, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal."  Widdifield v. Commonwealth, 43 Va. App. 559, 563, 600 S.E.2d 159, 161 (2004) (*en banc*); see also Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); Mounce v. Commonwealth, 4 Va. App. 433, 435, 357 S.E.2d 742, 744 (1987).

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>