## Richmond

WILLIAM BARNES v. COMMONWEALTH OF VIRGINIA.

June 11, 1973.

Record No. 8170.

Present, All the Justices.

*Morton B. Spero* (*Spero & Levinson*, on brief), for plaintiff in error.

*Linwood T. Wells, Jr., Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Per Curiam.

On an indictment for murder, William Barnes was tried by a jury and found guilty of involuntary manslaughter in the slaying of Robert Nelson Abbott. In accordance with the verdict, the trial court entered judgment on June 15, 1972, sentencing Barnes to the state penitentiary for five years. We granted a writ of error limited to a consideration of the trial court's refusal to admit certain testimony concerning Abbott's alcoholism and his allegedly aggressive behavior when intoxicated.

The uncontradicted evidence shows that on the night of January 2, 1972, Barnes, a nineteen year old high school senior, saw the decedent, whom he knew only by sight, in a restaurant in the City of Petersburg where both were drinking beer. Barnes asked Abbott for assistance in performing some cleanup duties at the dry cleaning estab-

lishment where Barnes was employed after school hours. Abbott agreed to help and in exchange for his assistance, Barnes purchased some beer for the decedent, part of which the men took with them to the cleaning establishment. While they worked they drank some beer and liquor. An argument ensued, and Barnes shot and killed Abbott.

When the police arrived they found Abbott lying dead on the floor with an unsheathed straight razor in his hand. Barnes admitted to the officers that he had shot Abbott several times but asserted that he had done so in self-defense when Abbott advanced on him brandishing the razor.

The Commonwealth relied primarily upon the physical facts and the defendant's admissions. As part of the Commonwealth's evidence a laboratory analysis made by the Chief Medical Examiner was introduced that showed that Abbott's blood alcohol content at the time of his death was .21 percent.

The defendant, before testifying in his own defense, attempted to introduce evidence of the decedent's turbulent and violent personality while under the influence of alcohol. To this end defense counsel called two witnesses. He offered to have Mrs. Nancy Holt, Abbott's former wife, testify concerning her knowledge, prior to their separation in 1967, of his drinking problem and aggressive tendencies while intoxicated. He offered to prove by Howard Wild, a rehabilitation officer at Central State Hospital, that the decedent, following separation from his wife, was hospitalized "as a habitual excessive drinker" until shortly before his death.

The trial court refused to permit the two proffered defense witnesses to testify on the ground that the aggressive tendencies of the decedent could not be shown in pleading self-defense unless the defendant was aware of them. The court held that evidence could be adduced to show the decedent's condition on the day or night of the homicide but that no prior history of alcoholism could be developed. While defense counsel did not complete the record by proffering the testimony of the two witnesses, he adequately preserved his objection to the court's ruling by summarizing what the evidence would show.

The Attorney General conceded before us that where an accused adduces evidence that he acted in self-defense, evidence of specific acts is admissible to show the character of the decedent for turbulence and violence, even if the accused is unaware of such character.

*Stover* v. *Commonwealth*, 211 Va. 789, 180 S.E.2d 504 (1971); *Randolph* v. *Commonwealth*, 190 Va. 256, 56 S.E.2d 226 (1949).

The defense sought to introduce the evidence of prior drinking problems in order to support the testimony which Barnes subsequently gave, in much greater detail than in his statement to the investigating officers, in justification of the homicide. For that purpose the evidence was relevant and material. Where, as here, there is evidence that the victim was intoxicated at the time of the shooting, evidence of his character or reputation for turbulence when in such condition is admissible on the issue of self-defense. 1 Wharton, *Criminal Evidence* § 236, at 513 (13th ed. C. Torcia 1972); Annot., 1 A.L.R. 3d 571, at 593 (1965). *See Hubbard* v. *Commonwealth*, 190 Va. 917, 930, 59 S.E.2d 102, 108 (1950).

Thus the ultimate issue becomes whether such evidence of prior conduct was sufficiently connected in time and circumstances with the homicide as to be likely to characterize the victim's conduct toward the defendant. *Randolph*, 190 Va. at 265, 56 S.E. 2d at 230. Or stated alternatively, the test is whether the evidence of prior character is "so distant in time as to be void of real probative value in showing present character." 3A Wigmore, *Evidence* § 928, at 755 (Chadbourn Rev. 1970).

Although the jury might have concluded that evidence of the decedent's turbulent nature five years before was too remote, it might have determined that his aggressive tendencies surfaced whenever he drank to excess, and, in view of the evidence of Abbott's intoxication at the time of his death, found that Barnes's version of the slaying was credible. Once a nexus for relevancy of prior conduct or character has been established, as here, the issue of remoteness concerns the weight of the evidence and the credibility of the witnesses, both of which are within the province of the jury. *See* 5 *id.* § 1617 (3d ed. 1940). To bar such evidence altogether was error. Accordingly we will reverse the judgment and remand the case for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*