COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, McClanahan and Senior Judge Bumgardner
Argued at Richmond, Virginia


IRA ANDERSON, A/K/A
  THOMAS VERNON KING, JR.

                                         MEMORANDUM OPINION[*] BY
v.      Record No. 0250-07-2        JUDGE ELIZABETH A. McCLANAHAN
                                             MAY 6, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
John W. Scott, Jr., Judge

Wendy B. Harris, Deputy Public Defender, for appellant.

Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Anderson appeals his convictions of second-degree murder and use of a firearm in the

commission of a felony. He argues the trial court erred in denying his motion to set aside the

verdict because the Commonwealth suppressed exculpatory evidence in violation of Brady. We

affirm the trial court.

I. BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

That principle requires us to "'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences that may be drawn therefrom.'" Kelly v. Commonwealth, 41 Va. App. 250,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

254, 584 S.E.2d 444, 446 (2003) (*en banc*) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)).

Anderson, his girlfriend, and two other friends went to a nightclub in Fredericksburg on New Year's Eve. While they were there, a large number of fights broke out both inside and outside of the nightclub among at least one hundred people. Police officers from three agencies responded to the scene. The crowds were out of control and, at times, confrontational with the officers. During the melee, the police were fired upon by weapons and returned fire. At some point, Anderson left the nightclub and met his girlfriend at the nearby 7-Eleven convenience store. While Anderson was sitting in the passenger's seat of her rental SUV, the victim, who was standing outside, struck Anderson in the face. Anderson was cut and, although the girlfriend testified she saw something shiny in the victim's hand, it was never established whether Anderson was struck with anything in particular. Anderson then pulled out a firearm and shot at least four or five rounds at the victim who was first hit in the arm and then fatally in the forehead. A forensic scientist testified on behalf of the Commonwealth that the victim was "at least greater than" two feet from Anderson when he was shot. Additionally, the direction of the bullet to the head indicated the victim was bending down when shot. Anderson's girlfriend drove away from the convenience store parking lot at an excessive rate of speed with no headlights as Anderson continued shooting. Anderson subsequently tossed the weapon out the window.

When the police stopped Anderson and his girlfriend to investigate whether they were involved in the shooting, Anderson identified himself as Thomas King, Jr.[1] He claimed he was cut while trying to break up a fight between two groups of women at the nightclub. Anderson also claimed he saw a shooting take place involving two other individuals.

---

[1] Anderson testified at trial that he gave the police his cousin's name.

After further investigation, the police discovered the gun and determined Anderson was in fact the shooter. They arrested Anderson on the murder and firearm charges. Anderson was also charged with criminal street gang participation. That charge was severed from the murder charge at Anderson's request. Additionally, Anderson moved *in limine* to prohibit the Commonwealth from presenting evidence of Anderson's membership in a gang or evidence that the shooting was a gang-related incident. The Commonwealth agreed not to present any such evidence unless the defendant opened the door to the issue.

Anderson claimed he shot the victim in self-defense. At trial, he said he bought the gun off the street because he was receiving death threats on his cell phone. He brought the gun to the club on New Year's Eve but left it in a different car and then retrieved it at some point before the shooting. Anderson called a witness who testified the victim had a reputation for rivalries and fighting and that the victim and his friends were known for violent crimes. The jury convicted Anderson of second-degree murder and use of a firearm in the commission of a felony.

Prior to sentencing, the defense received the pre-sentence report, which noted that the victim was "either in the 55 Mob from Woodbridge or the Park Avenue Crew." Anderson filed a motion to set aside the verdict and argued the failure of the Commonwealth to produce this evidence constituted a <u>Brady</u> violation since it would have shown the victim's propensity for violence. In response, the Commonwealth argued the information in the report "was a bare assertion by somebody who wrote a presentence report not knowing exactly where they got it from or how reliable that information" was. Further, the prosecutor specifically denied having any information that the victim was a gang member. The trial court denied the motion.

## II. ANALYSIS

On appeal, Anderson argues the Commonwealth was required to disclose the information contained in the pre-sentence report regarding the victim's membership in either "55 Mob from

Woodbridge or the Park Avenue Crew" under Brady v. Maryland, 373 U.S. 83 (1963). There are three components of a Brady violation, the first being that the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching. Deville v. Commonwealth, 47 Va. App. 754, 756, 627 S.E.2d 530, 532 (2006). Anderson argues the evidence regarding the victim's alleged gang affiliations was exculpatory because it would have shown the victim's propensity for violence and thus strengthened Anderson's claim of self-defense.[2] The Virginia Supreme Court has held that when a defendant claims self-defense, proof of specific acts is admissible to show who was the aggressor and the reasonable apprehension of the defendant for his own safety.[3]

---

[2]     "In Virginia, the rule in criminal cases is that, when a defendant adduces evidence of self-defense, proof of specific acts is admissible to show the character of the victim for turbulence and violence, even when the defendant is unaware of such character. Barnes v. Commonwealth, 214 Va. 24, 25-26, 197 S.E.2d 189, 190 (1973); Stover v. Commonwealth, 211 Va. 789, 794, 180 S.E.2d 504, 508 (1971). When admissible, such evidence bears upon the questions of who was the aggressor or what was the reasonable apprehension of the defendant for his safety.

Upon the question of who was the aggressor, the issue is what the victim probably did, and evidence of recent acts of violence toward third persons ought to be received, if connected in time, place, and circumstance with the crime, as to likely characterize the victim's conduct toward the defendant. Randolph v. Commonwealth, 190 Va. 256, 265, 56 S.E.2d 226, 230 (1949). See Burford v. Commonwealth, 179 Va. 752, 766-67, 20 S.E.2d 509, 515 (1942); Rasnake v. Commonwealth, 135 Va. 677, 697-98, 115 S.E. 543, 549-50 (1923)."

Workman v. Commonwealth, 272 Va. 633, 649-50, 636 S.E.2d 368, 377 (2006) (quoting McMinn v. Rounds, 267 Va. 277, 281, 591 S.E.2d 694, 697 (2004)).

[3] There was evidence that the victim was in fact the aggressor and struck Anderson before he shot the victim. Anderson shot the victim in the head while the victim was bending over at least two feet away while Anderson was within the confines of a sport utility vehicle. One witness testified that the victim had a reputation for rivalries and fighting and that the victim and his friends were known for violent crimes. Despite all that evidence, the jury obviously did not believe that Anderson acted in self-defense.

We reject Anderson's argument that the evidence of the victim's affiliation with the groups identified in the pre-sentence report was exculpatory. Anderson requested that the criminal street gang participation charge be severed and moved to exclude from the evidence all references to gang affiliations or allegations that the shooting was a gang-related incident. Thus, even assuming the Commonwealth possessed the information contained in the pre-sentence report,[4] the Commonwealth had no reason to believe any information regarding the victim's gang affiliations would be relevant, much less exculpatory. Even if a juror might associate gang affiliation with wrongdoing in general, gang membership alone is not evidence of prior bad conduct. See Utz v. Commonwealth, 28 Va. App. 411, 420, 505 S.E.2d 380, 385 (1998). And there is no evidence in the record to support a notion that this information would have led to evidence of prior bad acts. See, e.g., Workman v. Commonwealth, 272 Va. 633, 647-48, 636 S.E.2d 368, 376 (2006) (information must be admissible or lead to admissible evidence).[5]

Because the information contained in the pre-sentence report was not exculpatory, we affirm the judgment of the trial court.

Affirmed.

---

[4] The Commonwealth denied having any knowledge that the victim was a gang member, and the source of the information in the pre-sentence report was unknown. Although "information known to the police is information within the Commonwealth's knowledge[,] and the prosecutor is obliged to disclose [it] regardless of the state of his actual knowledge," Moreno v. Commonwealth, 10 Va. App. 408, 418, 392 S.E.2d 836, 842-43 (1990), the record fails to show that the police knew the victim was a gang member.

[5] There was no evidence in the record to indicate that either one of the groups identified in the report were "gangs" as that term might be defined for purposes of acts constituting criminal street gang participation. See Code § 18.2-46.1. There is also no evidence in the record to indicate the source of the alleged gang affiliation or to which of the two groups identified the victim allegedly belonged.