COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Felton, Judges Kelsey and McClanahan
Argued at Salem, Virginia


JOSHUA JONATHAN HAIRSTON

                                          MEMORANDUM OPINION[*] BY
v.      Record No. 1889-09-3             JUDGE ELIZABETH A. McCLANAHAN
                                          FEBRUARY 8, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FLOYD COUNTY
Ray W. Grubbs, Judge

W. Harrison Schroeder (Profitt & Schroeder, on brief), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.


Joshua Jonathan Hairston shot and killed Sean Neumann while engaged in an illegal drug transaction. Rejecting Hairston's plea of self-defense, a jury convicted him of second-degree murder and use of a firearm in the commission of murder. On appeal, Hairston argues the trial court erred when it excluded certain evidence allegedly bearing on the victim's character and Hairston's state of mind at the time of the shooting. We disagree and affirm Hairston's convictions.

I.

According to Hairston's own testimony, he was a drug dealer and had been selling crack cocaine to Neumann once or twice a week for approximately six months. Hairston went to Neumann's home on the day of the shooting to engage in another such drug transaction, and to purchase marijuana from Neumann. It is undisputed that, upon meeting with Neumann, Hairston

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

shot and killed Neumann in the living room of Neumann's home. Hairston shot Neumann four times with Hairston's own gun, which he carried regularly. Hairston admitted that Neumann was unarmed at the time.

Hairston testified that, just before the shooting, Neumann grabbed Hairston's bag of cocaine, and said "I'm the police man," and "we [are] taking this [bag of cocaine] for evidence." Afterwards, according to Hairston, Neumann presented a knife and threatened another individual, who had driven Hairston to Neumann's home; but Neumann then "just throws the knife away." Hairston testified that Neumann then walked toward him and said "we own you boy," bumped his knees, and slapped him. Hairston pulled out his gun and shot it, Hairston stated, "expect[ing]" it would cause Neumann "to run or something"; but "[h]e just looked at the gun with his hands out like this and just, just ran for me." Hairston further claimed he "expected [Neumann] to grab the gun." At that point, Hairston stated, he "pulled the trigger," and "just kept pulling it" until Neumann fell to the floor. According to expert testimony, Neumann was at least two or more feet from Hairston when he was shot.

In seeking to advance his plea of self-defense, Hairston filed a motion *in limine* moving the court to allow him to introduce certain evidence at trial, including, *inter alia*, the following: (i) two photographs of Neumann's bedroom, one showing a framed photograph of a young child dressed in Klu Klux Klan garb with the notation "Klan Day, Platt National Park, June 16, 1924," and the other showing a Confederate flag hanging on the wall; (ii) a statement Neumann allegedly made to Hairston a few months prior to the shooting to the effect that Neumann had just gotten out of prison for killing someone, without any description of the circumstances; and (iii) conviction orders and related police reports regarding Neumann's convictions for attempted assault in 1988, vehicular manslaughter in 1990, and obstruction of justice, a misdemeanor, in 2001. The Commonwealth also filed a motion *in limine* seeking to have this evidence excluded

at trial. After hearing Hairston's testimony regarding Neumann's alleged statement to Hairston and argument of counsel on the respective motions, the trial court found this evidence to be irrelevant to the issues of self-defense, character, and state of mind, and thus granted the Commonwealth's motion to disallow its introduction.

Following Hairston's conviction for second-degree murder and use of a firearm in the commission of murder, Hairston moved the trial court to set aside the verdict and for a new trial, at which time his defense counsel renewed the arguments as to the admissibility of the proffered evidence described above. The trial court denied the motion and entered judgment against Hairston on both convictions.

## II.

When reviewing a trial court's decision to admit or exclude evidence, we use an "abuse of discretion standard." Avent v. Commonwealth, 279 Va. 175, 197, 688 S.E.2d 244, 256 (2010) (citation and internal quotation marks omitted). "Applying this standard, 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" Satterwhite v. Commonwealth, 56 Va. App. 557, 563, 695 S.E.2d 555, 558 (2010) (quoting Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009)).

## A.

Hairston first argues the trial court erred in excluding the two photographs of Neumann's bedroom. There was no evidence indicating Hairston had ever seen the items in Neumann's bedroom shown in those photographs. Hairston nevertheless asserts the photographs were relevant and admissible because they would have put into context his testimony that Neumann said to him just before the shooting, "we own you boy." According to Hairston, this statement, considered along with the two photographs, showed that Neumann was a racist, that he was

- 3 -

affiliated with or sympathetic towards the Klu Klux Klan, and that he had a violent character. The trial court heard these arguments and rejected them, concluding the two photographs had no "probative value."

As the trial court noted, Hairston and Neumann had an ongoing relationship through their drug transactions, and were brought together at the time of the shooting in anticipation of such a transaction. In that context, the court stated, Neumann's statement did not "necessarily have racial overtones." Indeed, to the extent Neumann actually made the statement to Hairston, "we own you boy," Neumann may very well have made it in the context of his other alleged statement to Hairston at that time, "I'm the police man," and "we [are] taking this [bag of cocaine] for evidence."

Further, there was no evidence that Neumann was affiliated with or sympathetic towards the Klu Klux Klan. And the trial court found no sufficient inference of such based on the items in Neumann's bedroom. Nor did the trial court find a sufficient inference that Neumann was a violent person because of his possession of those items.

As the Supreme Court recently reiterated in Avent, "'[A] great deal must necessarily be left to the discretion of the [trial court], in determining whether evidence is relevant to the issue or not. Evidence is relevant if it has any logical tendency to prove an issue in a case.'" Avent, 279 Va. at 197-98, 688 S.E.2d at 257 (quoting John Crane, Inc. v. Jones, 274 Va. 581, 590, 650 S.E.2d 851, 855 (2007)) (deferring to trial court's finding that proffered testimony of victim's racial statements was not relevant to issue of self-defense in appellant's murder trial).

Here, the trial court determined that the two photographs of the victim's bedroom had no logical tendency to prove that Hairston shot Neumann in self-defense, and thus excluded them. On the record before us, we cannot say the trial court abused its discretion in doing so.

B.

Next, Hairston argues the trial court erred in excluding Neumann's alleged statement to Hairston, made about three months prior to the shooting, that Neumann had just been released from prison for having killed someone. Hairston argues Neumann's statement was relevant to Hairston's state of mind at the time of the shooting, that is, it was a basis for his fear of Neumann, and thus related to his plea of self-defense.

To be sure, "crucial issues in [Hairston's] plea of self-defense were his state of mind at the time of the shooting and how the circumstances reasonably appeared to him at that time." Jones v. Commonwealth, 217 Va. 226, 228, 228 S.E.2d 124, 125 (1976). But at the pre-trial hearing on the motions *in limine*, Hairston, when asked if Neumann's statement was "something that played into [his] decision to shoot [Neumann]," testified: "I didn't even think about that. I just, just think [sic] about him coming at me."

In light of this testimony, the trial court found that, "according to Mr. Hairston's own statements from the stand, the statements allegedly made by the victim really had no affect upon the defendant and his conduct." The trial court thus granted the Commonwealth's motion and excluded Neumann's alleged statement from being introduced at trial. Once again, on the record here presented, we cannot say the trial court abused its discretion in deciding to exclude this evidence.

C.

Finally, Hairston argues the trial court erred in excluding the conviction orders and related police reports regarding Neumann's convictions for attempted assault in 1988, vehicular manslaughter in 1990, and obstruction of justice, a misdemeanor, in 2001. Hairston contends this evidence showed Neumann had a violent character.

> "[W]here an accused adduces evidence that he acted in
> self-defense, evidence of specific acts is admissible to show the

- 5 -

character of the decedent for turbulence and violence, even if the accused is unaware of such character." Barnes v. Commonwealth, 214 Va. 24, 25, 197 S.E.2d 189, 190 (1973). However, this statement of the law has been qualified. "[T]he ultimate issue becomes whether such evidence of prior conduct was sufficiently connected in time and circumstances with the homicide as to be likely to characterize the victim's conduct toward the defendant." Id. at 26, 197 S.E.2d at 190.

Avent, 279 Va. at 206-07, 688 S.E.2d at 261; see Workman v. Commonwealth, 272 Va. 633, 649-50, 636 S.E.2d 368, 377 (2006) (explaining that such specific acts of the victim must be "'recent acts of violence'" in order to be "'connected in time'" to the homicide (quoting McMinn v. Rounds, 267 Va. 277, 281, 591 S.E.2d 694, 697 (2004))).

Here, the trial court excluded the evidence of Neumann's three prior convictions upon finding that "the nexus [was] missing to make these convictions relevant to the issues as to [Hairston's] actions." As with the trial court's other two decisions to exclude Hairston's proffered evidence at issue in this appeal, we cannot say the trial court abused its discretion to exclude the evidence of Neumann's convictions. More specifically, given the age and nature of those convictions, it was reasonable for the trial court to conclude that they were not "'sufficiently connected in time and circumstances'" to Neumann's death as would be "'likely to characterize [Neumann's] conduct toward the defendant.'" Avent, 279 Va. at 207, 688 S.E.2d at 261 (quoting Barnes, 214 Va. at 26, 197 S.E.2d at 190).

The incident giving rise to Neumann's first conviction, attempted assault, occurred twenty years before his fatal encounter with Hairston. Furthermore, unlike that encounter, Neumann's attempted assault conviction involved resisting arrest. See id. (affirming trial court's exclusion of evidence showing victim's alleged prior acts of violence where they were "between 10 and 12 years before the killing, and they involve[d] domestic conduct, not a confrontation of the type [appellant] alleges occurred on the day in question"). Similarly, Neumann's second

conviction was over 18 years before the subject shooting, and involved a vehicular homicide; his third conviction was over seven years old and involved another incident of resisting arrest.

## III.

For the reasons stated above, we conclude the trial court did not commit error in excluding Hairston's proffered evidence allegedly bearing on the victim's character and Hairston's state of mind at the time of the shooting.  We thus affirm Hairston's convictions.

<u>Affirmed.</u>