COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Huff and Athey
Argued at Norfolk, Virginia

SHELTON GIVENS

v.        Record No. 1654-18-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE CLIFFORD L. ATHEY, JR.
FEBRUARY 11, 2020

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John R. Doyle, III, Judge

Daymen Robinson for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Mark R. Herring, Attorney General, on brief), for appellee.


Shelton Givens ("Givens") appeals his convictions for second-degree murder, in violation

of Code § 18.2-32, and for the use of a firearm in the commission of a felony, in violation of

Code § 18.2-53.1.  Givens assigns error to the trial court's refusal to admit into evidence, in its

entirety, the video recording of Givens's statement to Detective Joshua Hathaway ("Detective

Hathaway").  Givens further assigns as error the trial court's failure to admit the portions of his

statement that pertained to the decedent's propensity and reputation for violence, thereby

limiting his opportunity to present additional evidence supporting Givens's assertions that he was

acting in self-defense.  Finally, Givens assigns error to the trial court's refusal to enter into

evidence some of the decedent's prior felony convictions.  We conclude that the trial court did

not err.  Consequently, the convictions are affirmed.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. FACTUAL BACKGROUND[1]

On May 29, 2016, Norfolk Police Officer Frank St. George ("Officer St. George") was dispatched to the scene of an alleged shooting. Kenneth Britt ("the victim") was found lying dead on the ground in front of the apartment building where the officer was dispatched. As Officer St. George arrived on the scene, a bystander informed him that Givens was the one who "did it." Givens subsequently surrendered to Officer St. George by immediately dropping to his knees and placing his hands behind his head. Officer St. George recovered a 9mm semi-automatic handgun located on the ground beside Givens. The handgun was found empty with the slide back, indicating that the weapon had been fired until fully expended.

Givens was subsequently interviewed at the scene by Detective Hathaway. During the initial interview, Givens stated that before the shooting, he and the victim had argued while the victim was walking his dog. Specifically, Givens told Detective Hathaway that the victim advised him to go get his gun, because the victim was "going to kill [Givens]." Following this heated exchange, the victim walked back to his apartment. Givens, already in possession of a concealed weapon, followed the victim and "waited by the side of [the victim's] apartment building for a couple minutes." When Givens identified the victim coming out of the apartment building with a handgun, Givens told Detective Hathaway that he fired a shot at the victim, knocking the victim to the ground. Because the victim "still looked like he was doing something," Givens stated that he "shot [the victim] some more." An autopsy of the victim disclosed eight bullet entrance wounds. The official cause of death was multiple gunshot wounds to the victim's torso. Six of the exit wounds showed signs of shoring due to the victim lying on the ground.

---

[1] Under familiar appellate principles, the evidence is summarized in the light most favorable to the Commonwealth, the prevailing party at trial. Gerald v. Commonwealth, 295 Va. 469, 472-73 (2018).

Detective Hathaway conducted two additional interviews with Givens at the police station that evening; the last interview was preserved by video recording. During each interview, Givens confirmed that he and the victim had argued, that the victim threatened to kill him, and that he shot the victim when he saw that the victim possessed a handgun as the victim was exiting the apartment building.

Givens described his actions as follows: (1) Givens pulled out his handgun, (2) he went to the corner of the victim's building, (3) he waited "a minute or two" to see whether the victim would retrieve his gun, and (4) when he saw the door to the apartment building open, and the victim emerge with a gun, he shot the victim who then immediately fell to the ground. Givens also confirmed that while the victim was on his back, the victim reached his right hand towards the door that was next to him and "was still doing something with his hands around where the firearm was." Givens then admitted to approaching the victim, standing over him, and firing several more gunshots into the victim's chest.

Givens also described an argument the victim had with Givens's cousin, Amber Haskins, in which Givens contends that the victim brandished a firearm. On the day before the shooting, Givens asserts that the victim got into another argument with Haskins over a post she had made on Facebook. This argument ended with the victim spitting in Haskins's face. Based on his knowledge of these arguments with his cousin, Givens advised Detective Hathaway that he felt that he needed to protect his family from the victim. At this point, Givens also told Detective Hathaway that the victim always carried a .40 caliber handgun.

Although Givens repeatedly asserted during the interviews that he was afraid of the victim, he acknowledged that the victim never removed his handgun from his waistband before, during, or after Givens shot him—a total of eight times, with six of the shots while the victim

was lying on the ground. Givens also contended in the recorded interview that he had been told that the victim had recently shot a youth in the neighborhood.

In support of his theory of self-defense, Givens sought, and the trial court permitted, the introduction of relevant evidence regarding the victim's prior violent acts as well as the victim's reputation for violence. The trial court, however, denied Givens's motion to read into evidence the entirety of his recorded statement given to Detective Hathaway. In denying Givens's motion, the trial court ruled that only those portions of his recorded statement that related to events Givens had personally witnessed that might constitute acts of violence were admissible. The trial court went on to explain that Givens could present testimony from people who personally witnessed the alleged violent acts that Givens had "heard about" in order to support Givens's assertion that the victim had a reputation for violence in the community.

The trial court also permitted Givens to introduce a certified copy of the victim's August 9, 1999 felony conviction for robbery and attempted robbery, as well as two firearm convictions from December 1998 in support of Givens's assertion that he acted in self-defense. However, the trial court neither permitted a certified copy of the victim's 1998 conviction for larceny from the person to be entered into evidence on the basis that larceny is not a crime of violence; nor did the trial court permit certified copies of the victim's prior felony convictions from 1991-1996 to be entered into evidence, ruling that they were too remote in time from the circumstances surrounding the current charges.

On cross-examination, Detective Hathaway did acknowledge Givens's statements to him concerning his fear of the victim. Detective Hathaway also confirmed Givens's representation that the victim routinely carried a .40 caliber handgun, even though the victim was a convicted felon. Moreover, Detective Hathaway acknowledged Givens's consistent statements during the three interviews that he feared the victim would kill him, as well as the victim's immediate threat

- 4 -

that he was "going to kill [Givens]" on the day Givens shot and killed the victim. Based upon

the evidence, the trial court instructed the jury that they may consider both justifiable and

excusable self-defense as a potential defense in the case. The jury subsequently convicted

Givens and sentenced him to twelve years' incarceration. This appeal followed.[2]

## II. ANALYSIS

In general, "we review a trial court's decision to admit or exclude evidence using an

abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit

evidence absent a finding of abuse of that discretion." Carter v. Commonwealth, 293 Va. 537,

543 (2017) (quoting Avent v. Commonwealth, 279 Va. 175, 197 (2010)). "In evaluating whether

a trial court abused its discretion . . . we do not substitute our judgment for that of the trial court.

Rather, we consider only whether the record fairly supports the trial court's action." Id. (quoting

Grattan v. Commonwealth, 278 Va. 602, 620 (2009)). "The abuse-of-discretion standard [also]

includes a review to determine that the discretion was not guided by erroneous legal

conclusions." Id. at 543-44 (quoting Porter v. Commonwealth, 276 Va. 203, 260 (2008)).

## A. Rule 2:106

On appeal, Givens argues that pursuant to Rule 2:106 of the Virginia Rules of Evidence,

the trial court erred in denying his motion to permit the jury to consider his recorded statement in

its entirety after portions thereof, introduced by the Commonwealth, were admitted into evidence

by the trial court. We disagree.

---

[2] Part of the record in this case was sealed. In order to appropriately address the assignments of error raised by Givens, this opinion includes some limited portions of the record that were sealed. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

Virginia Rule of Evidence 2:106 provides in pertinent part:

> *Related Portions of a Writing in Civil and Criminal Cases.* When part of a writing or recorded statement is introduced by a party, upon motion by another party the court may require the offering party to introduce any other part of the writing or recorded statement which ought in fairness to be considered contemporaneously with it, *unless such additional portions are inadmissible under the Rules of Evidence*.

(Emphasis added).

Hearsay, as defined by the Supreme Court, is an out of court statement offered to prove the truth of the matter asserted. Robinson v. Commonwealth, 258 Va. 3, 6 (1999). It includes testimony given by a witness who relates what others have told him or what he has read. Id. Hearsay evidence is inadmissible under the Virginia Rules of Evidence unless it falls within one of the recognized exceptions to the hearsay rule. Id. The party attempting to introduce a hearsay statement has the burden of proving that the statement falls within one or more of the exceptions. Id.

The trial court permitted Givens to present admissible evidence regarding the victim's reputation for violence as well as the victim's prior violent acts. The trial court, however, correctly ruled that Givens could not enter into evidence portions of his interview with Detective Hathaway where he discussed the victim's alleged conduct that he had "heard from someone else or the community." The trial court allowed Givens to introduce any threatening statements made by the victim to Givens and events Givens personally witnessed that reflected on the victim's reputation for violence in the community, including any actual violent acts.

The trial court further instructed Givens that if he wished to call individuals to testify to their personal knowledge of the victim's reputation for violence in the community, or any of the victim's prior violent acts they witnessed, Givens was free to present such testimony. Givens declined the trial court's invitation by failing to call any additional witnesses.

Specifically, on appeal, Givens identifies two portions of his recorded statement where he alleges the trial court erred when it limited the introduction of the entirety of the recorded statement. First, Givens stated that the victim shot a youth in the community, adding to Givens's fear of the victim, and finally, Givens wanted to introduce evidence about his awareness that the victim had been recently released from serving seventeen years in prison. In reaching its decision, the trial court ruled:

> You can't put in hearsay. You can't just have the defense saying, "in my opinion, he shot [the young man]," if he never saw it happen. He can't say he was in prison for 17 years. That's not a specific act of violence. I think you can say, I witnessed him . . . brandish a firearm at Amber.

The trial court also ruled that Givens could "show parts of the video as long as it's in conformance with my ruling."

Givens then introduced four additional excerpts of the recorded statement. Givens also elicited testimony from Detective Hathaway that the victim routinely carried a .40 caliber handgun and that Givens maintained during their separate interviews that he was afraid of the victim. Finally, Givens elicited testimony from Detective Hathaway that the victim had threatened him on the day of the shooting and that he believed that there had been prior arguments between the victim and Givens's niece, Amber Haskins.

Givens argues that the two denied excerpts should also be admitted because there is no requirement that he actually witnessed the incident and that without both of these excerpts being admitted, the jury did not have proper evidence to conclude if Givens acted in self-defense. We disagree with Givens.

Givens stated that he personally witnessed the victim leave his home, cock his gun, and walk in the direction of the young man. Moments later Givens heard gunshots. This led Givens

to believe that the victim was the shooter of the young man, contending that the information provided circumstantial evidence that the victim shot the youth.

The trial court correctly differentiated between evidence about which Givens had first-hand knowledge (which was admissible) and matters that Givens heard by rumor in the community, i.e., hearsay (which was inadmissible). In fact, Givens represented at a pre-trial hearing that he had interviewed the young man who was allegedly shot by the victim and that Givens expected him to testify at trial. However, Givens neither called the youth as a witness, nor did he call anyone else with first-hand knowledge of the incident. Thus, the record fairly supports the trial court's decision to limit the excerpts of the video to acts in which Givens had first-hand knowledge. See Carter, 293 Va. at 543.

Accordingly, the trial court did not err when it found that portions of Givens's recorded statement contained inadmissible hearsay and that his statement could not, therefore, be entered into evidence in its entirety. Virginia Rule of Evidence 2:106 does not mandate that Givens's entire statement be introduced into evidence after the Commonwealth introduced portions of the statement, because those portions of the recorded statement that were not admitted contained inadmissible hearsay. Because the excluded portions of the statement were not personal observations, Givens has not carried his burden of proving an exception to the hearsay rule to permit admission of the statement in its entirety. See Robinson, 258 Va. at 6.

### B. Victim's Character Evidence and Prior Convictions

Givens also assigns as error the trial court's ruling that evidence that the victim had recently been released after serving seventeen years in prison, as well as evidence of all of the victim's prior convictions, was inadmissible as "too remote" in time or non-violent in their nature. We disagree.

Virginia Rule of Evidence 2:404(a)(2) establishes the admissibility of "evidence of a pertinent character trait or acts of violence by the victim of a crime offered by an accused who has adduced evidence of self-defense." "[W]here an accused adduces evidence that he acted in self-defense, evidence of specific acts is admissible to show the character of the decedent for turbulence and violence, even if the accused is unaware of such character." Carter, 293 Va. at 546 (quoting Barnes v. Commonwealth, 214 Va. 24, 25 (1973)). "[E]vidence of prior acts of violence by the victim is relevant as bearing on the reasonable apprehension which the defendant may have experienced and on the likelihood of the victim's aggressive behavior as claimed by the defendant." Luck v. Commonwealth, 30 Va. App. 36, 43 (1999) (quoting Edwards v. Commonwealth, 10 Va. App. 140, 142 (1990)).

Evidence pertaining to the victim's prior acts of violence, however, must be "sufficiently connected in time and circumstances . . . as to be likely to characterize the victim's conduct toward the defendant." Carter, 293 Va. at 546-47 (quoting Barnes, 214 Va. at 25). "[T]he test is whether the evidence of prior character is so distant in time as to be void of real probative value in showing present character." Id. (quoting Barnes, 214 Va. at 25).

"When a defendant alleges that he acted in self-defense, 'the number of specific acts of violence of the . . . victim which might be introduced [is] a matter within the sound discretion of the trial court.'" Id. at 547 (quoting Buford v. Commonwealth, 179 Va. 752, 767 (1942)). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." Id. at 543 (quoting Grattan, 278 Va. at 620).

The trial court ruled that Givens could present evidence of the victim's August 9, 1999 conviction of robbery and attempted robbery, and a December 12, 1998 conviction for two firearm counts. The trial court found that this "kind of behavior is connected enough to the

specific circumstances of this incident as related by [Givens]." The trial court, however, excluded the victim's 1998 conviction for larceny from the person because it was not "a crime of violence" or connected to the events. See, e.g., Carter v. Commonwealth, 280 Va. 100, 104-05 (2010) (holding that larceny offenses do not necessarily involve violent conduct). Additionally, the trial court disallowed five convictions from 1991-1996 ruling that they were "too remote" in time. Ultimately, the trial court ruled that the fact that the victim had recently been released after serving seventeen years in prison was not relevant to the victim's current propensity for violence.

Moreover, Givens argues that he should have been permitted to present the "entire arsenal" of available evidence to demonstrate the victim's character and propensity for violence because he bore the burden of proof for his claim of self-defense. We disagree.

The trial court's careful balancing comports with the Supreme Court's holding in Carter. In upholding the trial court's discretionary ruling, the Supreme Court stated "[i]t was well within the trial court's discretion whether to admit or deny additional evidence of the victim's prior violent conduct. The evidence the trial court excluded was either not relevant to the time and/or circumstances surrounding the victim's death." Carter, 293 Va. at 547.

As we noted in Anderson v. Commonwealth, 69 Va. App. 396, 405 (2018), a trial court does not abuse its discretion by limiting a victim's charges and convictions entered into evidence to only those charges and convictions that are relevant to a defendant's self-defense claim. In Anderson, the defendant attempted to enter into evidence ten prior criminal charges and convictions of the victim to further a self-defense claim. Id. at 399-400. The trial court allowed Anderson to admit into evidence four of the victim's prior convictions and excluded six other instances of alleged misconduct. Id. at 403. Finding no error, this Court affirmed the decision of the trial court. Id. at 405.

Similarly, here, Givens was permitted to introduce into evidence events and conduct regarding the victim's propensity for violence about which he had first-hand knowledge. Givens was also allowed to admit evidence of most of the victim's prior violent felony convictions. The trial court permitted evidence that the victim had incurred violent felony convictions, notwithstanding their age, provided that the convictions amply demonstrated the victim's propensity to engage in violent or turbulent conduct. See id. at 403. As such, this Court finds that the trial court did not abuse its discretion in limiting the introduction of evidence to those prior convictions and other evidence that was relevant to Givens's self-defense claim.

### III. CONCLUSION

We conclude that the trial court did not abuse its discretion either by refusing to allow the entirety of Givens's recorded statement into evidence, or by refusing to admit into evidence all of Givens's evidence in support of the victim's alleged propensity for violence, including all of the victim's prior convictions. For these reasons, we affirm Givens's convictions.

Affirmed.