UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Fulton and White
Argued at Fredericksburg, Virginia


NIGEL EMANUEL MCCAULEY

                                                            MEMORANDUM OPINION* BY
v.        Record No. 0202-22-4                              JUDGE JUNIUS P. FULTON, III
                                                                 FEBRUARY 7, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Kimberly A. Irving, Judge

Robert Bennett (Ashton, Walla & Associates, P.C., on briefs), for
appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Jason S.
Miyares, Attorney General, on briefs), for appellee.


        Following a jury trial, the trial court convicted Nigel Emanuel McCauley of aggravated

malicious wounding and using a firearm in the commission of a felony.  The trial court also

convicted McCauley, upon his guilty plea, of possessing a firearm after conviction of a felony.

McCauley was sentenced to a total of fifty-eight years of imprisonment with forty-five years and

eight months suspended.  McCauley argues that the trial court erred in denying his motion to

strike the aggravated malicious wounding and felonious use of a firearm charges because the

evidence was insufficient to sustain them, granting the Commonwealth's jury instruction on

express and implied malice, and denying his proposed jury instruction on flight.  McCauley also

argues that the trial court erred in excluding "information" about, and statements made by, the

victim to demonstrate that he was the aggressor and McCauley acted in self-defense.  We cannot

_____

        * Pursuant to Code 17.1-413, this opinion is not designated for publication.

consider McCauley's arguments concerning the sufficiency of the evidence and the jury instructions because he did not timely file, and thus make a part of the appellate record, a transcript which we find to be indispensable to the disposition of these issues. We further conclude that the trial court did not abuse its discretion in excluding McCauley's proposed evidence regarding the victim, and affirm the judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we discard any of McCauley's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

At about 8:00 a.m. on May 28, 2019, Howard Shaver, who lived in Apartment 1 at 8188 Peakwood Court in Prince William County, invited Michael Richards for a drink at the apartment. At about 8:45 a.m., Shaver also invited McCauley, who lived with his mother in the apartment above, to join him for a drink. McCauley joined Shaver, Richards, and another man on Shaver's balcony.

The men conversed casually about motorcycles as they drank beer. McCauley "jumped into" the conversation with a comment about the "outrageous size" of motorcycle engines. Richards said McCauley was "stupid" because such motorcycles did not exist. McCauley asked Richards in an angry manner if he had "a problem with" McCauley. Richards said he had no problem, then went inside and sat at the dining room table.

At some point, Shaver and the other man went to the store for more beer. McCauley left without speaking to Richards. When Shaver returned to the apartment from the store, Richards was there alone.

About five minutes later, McCauley knocked on Shaver's door. After answering the door, Shaver told Richards that McCauley wanted to speak to him. Richards, who was unarmed, walked out the door and saw McCauley walking away. McCauley then was about ten feet from Shaver's front door. When McCauley turned around to face Richards, Richards saw a gun in McCauley's hand. Shaver and Richards heard four gunshots. Richards, who was standing just outside the door, fell back into the apartment. Shaver asked McCauley why he had shot Richards, but McCauley said nothing, went to his car, and drove away. Shaver called 911 and went outside to wait for the police.

In a nearby apartment, Matthew Schaffer, a Fairfax County police officer, was awakened by the sound of two gunshots. From his window, Officer Schaffer saw a maroon sedan driving out of the parking lot of the apartment complex. Officer Schaffer heard a neighbor screaming for help because someone had been shot. Schaffer dressed quickly, grabbed his gun, and went to help. Outside, Officer Schaffer encountered Shaver. Officer Schaffer went to Shaver's apartment and found Richards in a pool of blood on the living room floor. Richards had been shot multiple times and injured in the groin, hip, and right arm. Officer Schaffer also called 911.

Prince William County police officers found two cartridge casings on the concrete breezeway leading to Shaver's apartment. Blood was smeared on the walls outside the apartment, and there was blood on the floor leading to the apartment door.

The police arrested McCauley later that day and found a nine-millimeter handgun and a magazine in the trunk of his car. Three bullets remained in the magazine. Forensic testing

proved that the two cartridge casings found at the crime scene were fired from the gun retrieved from McCauley's trunk.

Testifying in his own behalf, McCauley said that he returned to the apartment complex at about 7:30 a.m. on May 28, 2019, after finishing his overnight shift at Walmart. He saw Shaver, Richards, and the other male at Shaver's apartment. McCauley had known both Shaver and Richards for several years. At Shaver's insistence, McCauley went to Shaver's apartment and joined him and the others to drink beer. They talked about a barbecue that occurred at the apartment complex the previous night. During the conversation, Richards pulled out a knife to clean his fingernails.[1] McCauley admitted that he left the apartment shortly after he arrived, went outside to his car, obtained his gun and a pack of "Black & Milds," and returned to Shaver's place.

According to McCauley, Richards made two trips to the store that morning for more beer, returning the second time with someone named "Josh." Shaver and Richards were drinking steadily. McCauley believed that Richards was becoming intoxicated and said Richards became "more aggressive" as they were talking in Shaver's apartment.

McCauley claimed that, as he was preparing to leave the apartment for good, Richards accused him of being in a gang. As McCauley was walking toward the door, Richards said, "I'll have my cousin, Josh, kill you. In fact, I'll do it myself." McCauley claimed that Richards "charged" after him out the door and accused him of being in a rival gang. Richards had his hand in his pocket, and said he was going to kill McCauley. McCauley testified that he feared for his life. When Richards was within arm's reach of him, McCauley pulled out his gun and fired it twice. McCauley testified that he was not trying to kill Richards but only wanted to protect himself from a knife attack.

_____

[1] No knife was found on Richards' person after the shooting.

As relevant to McCauley's claim of self-defense, the trial court permitted McCauley to testify that Richards admitted he was a member of the Bloods gang and that McCauley had heard Richards bragging about stabbing his brother in 2017. However, the trial court excluded any testimony from McCauley that Richards had maintained that he was "untouchable" by the police so others should fear him, concluding that this evidence did not constitute "a prior act of violence that is contemplated within the law." Also, testimony that in 2015 McCauley heard Richards' girlfriend screaming that Richards had been violent toward her was also excluded as "too remote in time." And McCauley's testimony that he had known Richards to be "accosting" and "belligerent" when intoxicated was ruled inadmissible as failing to show a specific act of threatening behavior.

The trial court convicted McCauley after the jury's verdict. This appeal followed.

ANALYSIS

I. Sufficiency of the Evidence and Jury Instruction Claims

The trial court entered its order sentencing McCauley on February 7, 2022.[2] Under Rule 5A:8(a), a "transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court within 60 days after entry of the final judgment." Thus, the transcripts in this case were due to be filed on or before April 8, 2022.

---

[2] The trial court entered a *nunc pro tunc* order under Code § 8.01-428(B) to correct the clerical omission in the February 7, 2022 order to reflect that the trial court advised McCauley of his right to appeal and appointed appellate counsel for him at the sentencing hearing. When acting *nunc pro tunc* to correct a clerical order under Code § 8.01-428(B), "the court does not reacquire jurisdiction over the case. Rather, the trial court merely corrects the record by entry of an order *nunc pro tunc*, under the accepted fiction that the order relates back to the date of the original action of the court 'now for then.'" *Davis v. Mullins*, 251 Va. 141, 149 (1996). In supplemental briefing, McCauley acknowledges this principle but argues that in the absence of any perceived prejudice that we find him in "substantial compliance" and exempt him from the Rules. We decline to do so.

The transcript of the final day of McCauley's jury trial on July 15, 2021, was filed late on April 14, 2022. McCauley did not obtain an extension of time to file the July 15, 2021 transcript. *See* Rule 5A:8(a). The timely filed transcripts do not contain argument on a motion to strike after McCauley presented his own evidence. Nor does the record contain a motion to set aside the verdict. *See Commonwealth v. Bass*, 292 Va. 19, 33 (2016) (holding that in a jury trial where a defendant introduces evidence of his own, he preserves his objections to the sufficiency of the evidence "in a motion to strike at the conclusion of all the evidence or a motion to set aside the verdict"). Further, the timely filed transcripts do not contain the argument regarding the jury instructions that were granted or refused.

Having reviewed the record and the parties' briefs, we conclude that the July 15, 2021 transcript or written statement of facts is indispensable to a review of the sufficiency of the evidence, the claims McCauley raises regarding jury instructions, and a determination of whether these issues were properly preserved for appellate review under Rule 5A:18. *See Smith v. Commonwealth*, 32 Va. App. 766, 772 (2000); *Turner v. Commonwealth*, 2 Va. App. 96, 99-100 (1986). McCauley failed to ensure that the record contains a transcript or written statement of facts necessary to permit us to resolve the assignments of error challenging the sufficiency of the evidence and the trial court's rulings on jury instructions.[3] Rule 5A:8(b)(4)(ii). Therefore, we may not consider these assignments of error. *See id.*

---

[3] Copies of McCauley's proposed jury instructions were filed with the trial court and properly made part of this Court's record and McCauley urges us to consider whether the trial court erred in denying certain instructions based solely on the instructions themselves, without the benefit of the of the portion of the trial transcript where the jury instructions were argued and ruled upon. Because "[w]e review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion," *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022), the portion of the transcript containing the objections and rulings is indispensable to our review.

II. Evidence of "Information" about Richards and his Prior Statements

McCauley argues that the trial court erred in limiting his introduction of evidence to support his claim that he shot Richards in self-defense and that Richards was the aggressor. "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Wolfe v. Commonwealth*, 67 Va. App. 97, 106 (2016) (quoting *Blain v. Commonwealth*, 7 Va. App. 10, 16 (1988)). "On appellate review of issues involving the admissibility of evidence, the Court views the evidence in the light most favorable to the Commonwealth as the party who prevailed below." *Haas v. Commonwealth*, 71 Va. App. 1, 5 n.1 (2019), *aff'd in part and vacated in part*, 299 Va. 465 (2021).

Evidence is relevant if it has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. Generally, "[a]ll relevant evidence is admissible" unless provided otherwise by other rules. Va. R. Evid. 2:402. "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'" *Jones v. Commonwealth*, 71 Va. App. 70, 88-89 (2019) (quoting *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016)). "Although character evidence of the victim is generally not admissible to show conduct in conformity with that trait on a particular occasion, 'evidence of a pertinent character trait or acts of violence by the victim of the crime [may be] offered by an accused who has adduced evidence of self-defense.'" *Id.* at 89 (quoting Va. R. Evid. 2:404(a)(2)).

"[T]he ultimate issue becomes whether such evidence of prior conduct was sufficiently connected in time and circumstances . . . as to be likely to characterize the victim's conduct toward the defendant." *Carter v. Commonwealth*, 293 Va. 537, 546-47 (2017) (quoting *Barnes*

*v. Commonwealth*, 214 Va. 24, 25 (1973)). "Or stated alternatively, the test is whether the evidence of prior character is 'so distant in time as to be void of real probative value in showing present character.'" *Id.* at 547 (quoting *Barnes*, 214 Va. at 25).

In this case, the trial court permitted McCauley to testify that Richards was a member of the Bloods gang and that Richards purportedly accused McCauley of being a member of a rival gang. These circumstances were relevant to support McCauley's claim that he feared Richards meant to harm him on May 28, 2019. The trial court also permitted McCauley to explain that he feared Richards because he had stabbed his own brother in 2017. "It was well within the trial court's discretion whether to admit or deny additional evidence of the victim's prior violent conduct." *Id.*

In contrast to the admitted evidence, the testimony that Richards said that he was "untouchable" in the eyes of the police was neither proof of a "pertinent character trait" nor an "act of violence" to warrant admission under Virginia Rule of Evidence 2:404(a)(2). Such a statement amounted to nothing more than a boast of inside connections with law enforcement and had nothing to do with prior acts of violence. The same was true for defense counsel's vague proffer that Richards behaved in an "accosting" or "belligerent" manner when drunk. McCauley provided the trial court with no facts tending to show that Richards had committed any specific act of violence and, thus, was likely the aggressor against McCauley.

In addition, we find no basis to conclude that McCauley's testimony regarding hearing Richards' girlfriend shouting about him in 2015 was in any way connected in time and circumstances as "likely to characterize" his conduct toward McCauley several years later. *Carter*, 293 Va. at 547. The girlfriend's yelling about Richards' conduct towards her in 2015 in no way demonstrated a propensity of aggression against McCauley in 2019. Thus, we do not

find that the trial court abused its discretion in limiting McCauley's testimony concerning Richards or his prior statements.

CONCLUSION

For the foregoing reasons, we find that the trial court did not abuse its discretion in ruling inadmissible a portion of McCauley's proffered testimony concerning Richards. Because McCauley failed to timely file an indispensable transcript, the record is insufficient for this Court to consider the remaining assignments of error on appeal.[4] Accordingly, we affirm the judgment.

*Affirmed.*

---

[4] Waiver of McCauley's assignments of error pertaining to sufficiency of evidence and jury instructions is without prejudice to his right to seek a delayed appeal under Code § 19.2-321.1(A)(iv) or file a petition for a writ of *habeas corpus* in the appropriate court.